**NATIONAL HEALTH CORPORATION et al., Appellants,**

v.

**William R. SNODGRASS et al., Appellees.**

Supreme Court of Tennessee.

Aug. 1, 1977.

Rehearing Denied Sept. 17, 1977.

Richard F. LaRoche, Jr., Murfreesboro, for appellants.

Frank J. Scanlon, Asst. Atty. Gen., Brooks McLemore, Jr., Atty. Gen., Nashville, for appellees.

## OPINION

COOPER, Chief Justice.

The National Health Corporation (NHC) and its Tennessee subsidiaries have appealed from decrees entered in the Chancery Court of Davidson County dismissing two actions in which appellants sought a review of audits made by the Comptroller of the State of Tennessee. One action challenged the comptroller's audit report on the NHC Home Office for the period of October 1, 1973, through March 31, 1975. The second action challenged the comptroller's audit report covering the operation of the Oakwood Hall Nursing Home, Inc., a subsidiary of NHC, for the fiscal year ending September 30, 1974, and the conclusion that Oakwood should refund $2,771.29 to the State of Tennessee and $9,026.11 to individual program patients and their families. In both actions, appellants sought to have the chancery court review the audit reports under the Tennessee Uniform Administrative Procedures Act, T.C.A. § 4–502 et seq., or, in the alternative, by common law or statutory writ of certiorari. On considering motions to dismiss filed by appellees, Comptroller of the Treasury and the Department of Public Health, the chancellor concluded that the actions of the state officials that were the bases of the complaints were administrative and not subject to judicial review by writ of certiorari. The chancellor also concluded

that the audit reports were not "contested" cases and, consequently, were not reviewable under the Administrative Procedures Act. The chancellor then dismissed both actions.

This appeal presents the primary question: Is an audit of an intermediate care facility by the comptroller under the Tennessee Medical Assistance Act of 1968 subject to judicial review either under the Tennessee Administrative Procedures Act or by common law or statutory writ of certiorari. We agree with the chancellor that it is not.

The National Health Corporation (NHC) is the owner of the other nineteen plaintiff corporations, each of which owns and operates nursing homes (intermediate care facilities or ICF) in Tennessee. Each of the nursing homes contracted with the Tennessee Department of Public Health to participate in a program of health care under the Tennessee Medical Assistance Act of 1968, Title 14, Chapters 19 and 20 of the Tennessee Code Annotated. The Medical Assistance Act, among other things, provides for payments to health care providers who render medical services, including nursing home services, to indigent Tennessee citizens.

Under the Act, the comptroller annually determines the rate at which each intermediate care facility will be reimbursed by the Tennessee Department of Public Health. T.C.A. § 14–2006. The reimbursement rate is based upon cost information submitted by the ICF from the preceding fiscal year and is calculated by the comptroller on the basis of the actual per diem cost to an ICF in rendering care to an individual patient. T.C.A. § 14–2005. Cost reports submitted to the comptroller by the ICF's are required to be prepared "in accordance with the Medicare-Medicaid principles of cost reimbursement as stipulated in the Medicare Provider Reimbursement Manual, as updated. . . ." Rules and Regulations of the State of Tennessee, Rule 0380–1–10–.07.

In making its cost report, each of the plaintiff subsidiary corporations included in its cost of operation a "management fee"

paid to the parent corporation, National Health Corporation. The comptroller audited NHC for the period September 30, 1973, through March 31, 1975, to determine what services were rendered by NHC to its subsidiaries in exchange for the payment of the management fee. The comptroller also audited the Oakwood Hall Nursing Home, Inc., a subsidiary of NHC.

Following his usual practice, on completion of the audits the comptroller sent preliminary drafts of the audits to the corporations being audited, asked for comments, and had an "exit" conference for discussion of the preliminary audit with representatives of the corporations audited.

In the final audit of NHC the comptroller, among other things, reported that the management fees NHC charged its subsidiary health care facilities, which were included in patient cost, exceeded the actual cost of services NHC rendered the subsidiaries. The comptroller also indicated that he would audit each subsidiary ICF corporation to obtain further patient cost information.

NHC asked for a rehearing of the "audit report," stating it did so under the Tennessee Uniform Administrative Procedures Act (T.C.A. § 4–502 et seq.). The comptroller, being of the opinion the Tennessee Uniform Administrative Procedures Act did not cover an audit review, declined to have a "rehearing."

The final audit of Oakwood Hall Nursing Home, following on the heels of the NHC audit, reported that Oakwood Hall had overcharged patients and had overcollected funds from the State of Tennessee. On receipt of the audit, the Tennessee Department of Public Health notified Oakwood Hall that the Department would withhold from the next regularly scheduled payment the amount indicated in the audit report to be due the State of Tennessee.

The plaintiffs filed two actions seeking a judicial review of the "entire record of the proceedings before the Comptroller," under the Tennessee Administrative Procedures Act or, in the alternative, by common law or statutory writ of certiorari. Specifically, the plaintiffs asked that the chancellor hold the audit findings "to be arbitrary, capricious, illegal and in violation of plaintiffs' statutory and constitutional rights, as well as being a finding arrived at upon unlawful procedure, and also that said finding of the Comptroller is unsupported by evidence."

The Tennessee Uniform Administrative Procedures Act provides in T.C.A. § 4–523(a) that "a person who is aggrieved by a final decision *in a contested case* is entitled to judicial review . . ." (emphasis supplied). "Contested case" is defined in T.C.A. § 4–508(b) as:

. . . a proceeding, including a declaratory proceeding in which the legal rights, duties or privileges of a party are required by any statute or constitutional provision to be determined by an agency after an opportunity for a hearing. Such proceeding shall include, but not be restricted to rate making; price fixing; granting of certificates of convenience and necessity; the making, review or equalization of tax assessments; the grant or denial of licenses, permits or franchises where the licensing board is not required to grant the license, permit or franchise upon the payment of a fee or the finding of certain clearly defined criteria; and suspensions of, revocations of, and refusals to renew licenses.

■ An audit, as the term is commonly used, is not a "contested case," but is the methodical examination of records with intent to verify their accuracy. The audit of costs for patient care in an intermediate care facility, provided for in T.C.A. § 14–2004, is the methodical examination of records of the facility to verify the accuracy of the patient cost data reported to the comptroller by the intermediate care facility, and to verify that the data was reported "in accordance with the Medicare-Medicaid principles of cost reimbursement as stipulated in the Medicare Provider Reimbursement Manual." An audit by the comptroller under § 14–2005, in and of itself, does not determine any legal rights, duties or privileges of any party to the audit. It is merely a report of factual material, with

recommendations of the auditor. If some action is taken or decision is made by a state official based on the audit report, the decision made or action taken may constitute a "contested case," but not the audit or the report based on the audit, which at most would be only "evidence" to support the decision made or action taken.

Plaintiffs have suggested that the audits are a part of a "rate making" process by the comptroller and, as such, fit within the statutory definition of a "contested case." Results of audits may be used, and in some instances probably are, by the comptroller in determining the daily reimbursable rate of an intermediate care facility. But there is no allegation or suggestion that the daily reimbursable rate was set or changed by the comptroller for any of the nineteen plaintiffs as a result of the audits. The audit findings, under the circumstances described in the pleadings, would only be evidence of plaintiffs' failure to accurately report its patient cost data.

■ Plaintiffs also insist that the complaints set forth a cause of action under T.C.A. § 4–512 of the Tennessee Uniform Administrative Procedures Act, which authorized declaratory judgment actions with respect to the validity of rules enforced by administrative agencies, and that the chancellor erred in not so holding. As was pointed out by the chancellor in denying the petition to rehear in which this position was advanced, the thrust of the two actions was directed to securing a judicial review of the comptroller's audits. The attempted conversion of the complaints into actions for declaratory judgments did not occur until after the chancellor had dismissed the complaints. The chancellor could find no basis in the complaints for "rehearing" the actions and treating the actions as declaratory judgment actions, and neither can we.

■ Alternatively, plaintiffs insist the comptroller's audits were "judicial determinations" and thus subject to review by the chancery court under common law or statutory writs of certiorari. We see no merit in this position. The audit is in no manner a judicial function, nor a judicial determina-

tion. As heretofore noted, an audit is nothing more than an investigation and report of the findings of the investigation. The fact that the procedure used by the comptroller provides for a draft audit and a conference between those involved in the audit does not take the audit out of the administrative field and convert it to a "judicial determination" so as to make it subject to review by writ of certiorari.

■ Plaintiffs further insist that the allegations of the complaints indicate a violation of the due process and equal protection clauses of the Constitution of the United States and of the Constitution of Tennessee, and that the chancellor was in error in dismissing the complaints. Plaintiffs argue that the Tennessee Medical Assistance Act of 1968 denies the equal protection of the law to them in that there is no definite procedure for a "fair hearing" before an administrative body for providers of medical services such as the plaintiffs. As noted by defendants in their brief, "plaintiffs' right to such a hearing was never mentioned in plaintiffs' complaint, . . . was not decided by the Chancellor and is not . . . at issue before this Court." The only issue before this court is whether plaintiffs' complaints state a cause of action in the chancery court, where plaintiffs sought a review of the audit reports of the comptroller. We agree with the chancellor that they do not.

Decrees affirmed. Costs of the appeals are adjudged against National Health Corporation and its Tennessee subsidiaries that are parties to the actions.

FONES, HENRY, BROCK and HARBISON, JJ., concur.

### ORDER

The petition for rehearing filed by National Health Corporation, et al., is denied, with costs to be paid by petitioners.