# FILED

October 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| LEON DISHMON, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | |
| | ) | |
| | ) | Davidson Chancery |
| VS. | ) | No. 95-2141-III |
| | ) | |
| | ) | Appeal No. |
| SHELBY STATE COMMUNITY | ) | 01A01-9610-CH-00477 |
| COLLEGE, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

APPEAL FROM THE CHANCERY COURT
FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ROBERT S. BRANDT, CHANCELLOR

For Plaintiff/Appellee:

Harold D. Archibald
Archibald & Halmon
Memphis, Tennessee

For Defendant/Appellant:

Paul G. Summers
Attorney General and Reporter

Mary E. Walker
Assistant Attorney General

# VACATED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a dispute over back pay between Shelby State Community College and its Dean of Student Affairs. After the college president reinstated him approximately three years following his termination, the dean filed a petition under the Tennessee Uniform Administrative Procedures Act in the Chancery Court for Davidson County seeking back pay. The trial court conducted a bench trial and concluded that the dean was entitled to back pay. The college asserts on this appeal that its decision not to grant the dean back pay was not arbitrary and that the dean had not proved that he suffered any economic loss as a result of his termination. We have determined that the trial court did not have subject matter jurisdiction over this claim, and, therefore, we vacate the judgment and remand the case with directions that it be dismissed.

## I.

In March 1991, the Tennessee Board of Regents hired Leon Dishmon as the Dean of Student Affairs at Shelby State Community College ("Shelby State"). Mr. Dishmon agreed in his employment contract to devote his full time to his duties and to perform these duties to the best of his ability. The employment contract also provided that Mr. Dishmon's employment would be subject to state law and the "policies and requirements" of the Board of Regents and Shelby State and that, following a six-month probationary period, the employment agreement could be terminated by either party upon fifteen days notice.

As the Dean of Student Affairs, Mr. Dishmon served as Shelby State's chief manager of non-academic programs and student support services. His areas of responsibility included admissions and financial aid, career and job placement, counseling, and student records. He was also responsible for supervising student organizations and activities.

In August 1991, Shelby State requested the Board of Regents to provide funding for additional faculty and operating expenses. The Board of Regents questioned Shelby State's enrollment figures and decided to audit student enrollment, financial aid, and student records during the fall 1991 semester. That audit uncovered, among other things, violations of the Board of Regents' and Shelby State's guidelines and policies governing the payment of fees, the awarding of financial aid, the granting of scholarships and emergency loans, and irregularities in student admissions and student records. The results of this audit triggered another audit by the Comptroller of the Treasury uncovering additional problems regarding unfunded grants, uncollected debts from students, and liabilities to the United States Department of Education.

Mr. Dishmon, as Dean of Student Affairs, was responsible for several of the areas criticized by the audit. Accordingly, on July 24, 1992, Shelby State's president terminated Mr. Dishmon for poor performance. In his letter notifying Mr. Dishmon of his decision, the president informed Mr. Dishmon that he was entitled to a hearing before an administrative law judge if he wished to contest his termination. Mr. Dishmon requested a hearing which was held on February 10 and 11 and March 8, 1993 before an administrative law judge assigned by the Secretary of State. On July 1, 1994, the administrative law judge filed an initial order finding that Mr. Dishmon was "in technical violation" of several Tennessee Board of Regents policies but that "his violations were never due to bad faith on his part." He also found that Shelby State's president had been aware of the policy violations and had taken "virtually no action" to remedy them. Accordingly, the administrative law judge concluded that Mr. Dishmon "became the scapegoat for Shelby State's collective policy violations over which he was only one of a group of well-meaning violators" and ordered him reinstated to his previous or a similar position and that Shelby State pay his legal expenses.

Rather than reinstating Mr. Dishmon, Shelby State requested its own president to review the administrative law judge's order. On April 13, 1995, while this appeal

was pending, Mr. Dishmon moved for reinstatement and back pay. On May 11, 1995, Shelby State's interim president, who had replaced the president who discharged Mr. Dishmon, informed Mr. Dishmon that Shelby State would reinstate him effective June 1, 1995. Four days later, the interim president issued a final order affirming the administrative law judge's initial order. Mr. Dishmon requested the interim president to clarify his decision regarding damages and back pay. Neither the interim president nor Shelby State responded to this request.

Thereafter, on July 12, 1995, Mr. Dishmon filed a petition for judicial review in the Chancery Court for Davidson County. Based on allegations that Shelby State's refusal to pay him was "contrary to law, arbitrary and capricious," he requested the trial court to award him back pay from the date he had been dismissed as Dean of Student Affairs. On September 5, 1996, the trial court filed a memorandum opinion concluding that the administrative law judge and Shelby State had arbitrarily ignored Mr. Dishmon's request for back pay. In its September 24, 1996 judgment, the trial court awarded Mr. Dishmon "full back pay beginning with his wrongful termination of July 24, 1992 until his reinstatement effective June 1, 1995." Shelby State has perfected this appeal.

## II.

The scope of appellate review generally extends to the issues raised by the parties. However, appellate courts may, on their own motion, consider issues not raised by the parties in order to prevent needless litigation, injury to the public's interest, and prejudice to the judicial process. *See* Tenn. R. App. P. 13(b). Among the issues most commonly considered by appellate courts on their own motion is the trial court's subject matter jurisdiction.

The concept of subject matter jurisdiction involves a court's power to adjudicate a particular type of controversy. *See Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Turpin v. Conner Bros.*

*Excavating Co.*, 761 S.W.2d 296, 297 (Tenn. 1988). Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act, *see Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977); *Brown v. Brown*, 198 Tenn. 600, 618-19, 281 S.W.2d 492, 501 (1955), and cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication. *See Hicks v. Hicks*, No. 01A01-9309-CH-00417, 1994 WL 108896, at *2 (Tenn. Ct. App. Mar. 30, 1994) (No Tenn. R. App. P. 11 application filed).

A court's subject matter jurisdiction in a particular circumstance depends on the nature of the cause of action and the relief sought. *See Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). It does not depend on the conduct or agreement of the parties, *see Shelby County v. City of Memphis*, 211 Tenn. 410, 413, 365 S.W.2d 291, 292 (1963); *James v. Kennedy*, 174 Tenn. 591, 595, 129 S.W.2d 215, 216 (1939), and thus the parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver. *See Caton v. Pic-Walsh Freight Co.*, 211 Tenn. 334, 338, 364 S.W.2d 931, 933 (1963); *Brown v. Brown*, 198 Tenn. at 618-19, 281 S.W.2d at 501.

Judgments or orders entered by courts without subject matter jurisdiction are void, *see Brown v. Brown*, 198 Tenn. at 610, 281 S.W.2d at 497; *Riden v. Snider*, 832 S.W.2d 341, 343 (Tenn. Ct. App.1991); *Scales v. Winston*, 760 S.W.2d 952, 953 (Tenn. Ct. App. 1988). The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated. *See* Tenn. R. Civ. P. 12.08. Thus, when an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment and dismiss the case without reaching the merits of the appeal. *See J.W. Kelly & Co. v. Conner*, 122 Tenn. 339, 397, 123 S.W. 622, 637 (1909).

### III.

Mr. Dishmon's petition sought judicial review under the Tennessee Uniform

Administrative Procedures Act. The Act, however, is inapplicable to proceedings that do not fit within its adjudicatory definitions. *See National Health Corp. v. Snodgrass,* 555 S.W.2d 403, 405-06 (Tenn. 1977); *Mid-South Indoor Horse Racing, Inc. v. Tennessee State Racing Comm'n*, 798 S.W.2d 531, 536 (Tenn. Ct. App. 1990). Judicial review under the Act is limited to final decisions in contested cases. *See* Tenn. Code Ann. § 4-5-322(a)(1) (1998); Ben H. Cantrell, *Judicial Review under the Tennessee Uniform Administrative Procedures Act – An Update*, 13 Mem. St. U.L. Rev. 589, 595 (1983). Thus, judicial review under Tenn. Code Ann. § 4-5-322 is not available if the proceeding to be reviewed is not a contested case. *See Mid-South Indoor Horse Racing, Inc. v. Tennessee State Racing Comm' n*, 798 S.W.2d at 536.

According to Tenn. Code Ann. § 4-5-102(3) (1998), a "contested case" is a proceeding in which the legal rights, duties or privileges of a party are required by any statute or constitutional provision to be determined by an agency after an opportunity for a hearing. To determine whether any particular dispute is a contested case under the Uniform Administrative Procedures Act, we must examine the applicable statutes and constitutional provisions to see if any of them provide that a complainant's rights must only be determined after an opportunity for a hearing. *See* William P. Kratzke, *A Review of Contested Case Provisions of the Tennessee Uniform Administrative Procedures Act*, 13 Mem. St. U.L. Rev. 551, 554 (1983). We have found no provision in the United States Constitution, the Constitution of Tennessee, or the applicable statutes that requires Shelby State to provide its deans with a hearing in employment disputes.

Shelby State is part of the community college system. *See* Tenn. Code Ann. § 49-8-101(a) (1996). Its management and control is vested in the Board of Regents. *See* Tenn. Code Ann. § 49-8-101(b). Among the Board of Regents' statutory duties is the duty to establish a formal grievance procedure for the support staff of the community college system which affords them a contested case hearing with regard to demotions, suspensions, suspensions without pay, or terminations for

cause.  *See* Tenn. Code Ann. § 49-8-117(b)(3) (1996).  According to Tenn. Code Ann. § 49-8-117(a)(2), "support staff" includes employees "who are neither faculty nor executive, administrative or professional staff of the . . . community college."

Mr. Dishmon, as Dean of Student Affairs, was not a support staff employee at Shelby State, but rather was a member of the school's administration.[1]  Because Mr. Dishmon was not a support staff employee, he had no statutory right to a contested case hearing regarding the termination of his employment contract.  His employment dispute with Shelby State, accordingly, did not constitute a contested case under Tenn. Code Ann. § 4-5-102(3).

The record indicates that Shelby State appealed the administrative law judge's July 1994 reinstatement order to its interim president.  The interim president reviewed the case and entered a final order approving Mr. Dishmon's reinstatement and the payment of his legal expenses.  That determination appears to be the final step of the grievance procedure for administrative employees like Mr. Dishmon.  Rather than treating his claim for back pay as a grievable matter, Mr. Dishmon should have pursued it as damages for breach of his employment contract by filing a claim with the Tennessee Claims Commission in accordance with Tenn. Code Ann. § 9-8-307(a)(1)(L) (Supp. 1998).

Mr. Dishmon's demand for back pay from Shelby State was not a contested case.  Accordingly, he did not have a right to seek judicial review of the interim president's decision in the trial court under Tenn. Code Ann. § 4-5-322.  The trial court should have dismissed Mr. Dishmon's petition for lack of subject matter jurisdiction even if Shelby State did not assert the defense.

## IV.

We vacate the trial court's judgment and remand the case with directions that the trial court enter an order dismissing Mr. Dishmon's petition for lack of subject matter jurisdiction.  We tax the costs of this appeal in equal proportions to Leon

Dishmon and Shelby State Community College.


_____           WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE