11. [Deleted: Review Pursuant to Section 39–13–206(c), Tennessee Code Annotated]

[Deleted: Conclusion]

**TENNESSEE ENVIRONMENTAL COUNCIL, et al.**

v.

**WATER QUALITY CONTROL BOARD, et al.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 12, 2007 Session.

Sept. 28, 2007.

Robert E. Cooper, Jr., Attorney General and Reporter; Barry Turner, Deputy Attorney General; Sohnia W. Hong, Senior Counsel; and Phillip R. Hilliard, Assistant Attorney General, for the appellants, Tennessee Water Quality Control Board and the Tennessee Department of Environment & Conservation.

Richard C. Mangelsdorf, Jr., and Edward M. Yarbrough, Nashville, Tennessee, for the appellees, Tennessee Environmental Council, The Nashville Grotto of the National Speleological Society, Inc., and Public Employees for Environmental Responsibility and Tennessee Scenic Rivers Association.

J. Andrew Goddard, Nashville, Tennessee, for the appellee, City of Spencer.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and DONALD HARRIS, SR. J., joined.

This dispute arose in 2002 when environmental groups filed a Petition for Judicial Review under Tenn.Code Ann. § 4–5–322 of the Uniform Administrative Procedures Act seeking to reverse the grant of a wastewater discharge permit to the City of Spencer, Tennessee. The Chancellor issued a temporary injunction and directed the parties to participate in a judicial settlement conference under the supervision of the Third Circuit Court of Davidson County. Thereafter, the parties reached an agreement which was memorialized in an Agreed Final Judgment, wherein the City of Spencer agreed to permanently refrain from wastewater discharge into Dry Fork Creek. Although not a party to the proceeding, the Governor's Office joined in the agreement, agreeing to assist the parties to seek funding for an alternative discharge project. Three years later, the General Assembly enacted Chapter 502 of the 2005 Tennessee Public Acts, wherein $1,600,000 was allocated to the Department of Finance and Administration for the purposes of making a grant to the City of Spencer for sewage treatment facilities. When the funds were withheld because the State Building Commission had not approved the project, the City of Spencer made an oral motion during a status conference on November 22, 2005, requesting that the Chancellor compel the State to disburse the $1,600,000 grant. The court granted the motion and ordered the State to disperse the funds to the City. This appeal followed. We have determined that the ruling of the trial court must be overturned for three reasons. One, we find nothing in the Agreed Judgment that requires the State of Tennessee to provide additional funds to construct a wastewater discharge line. Two, based upon the separation of powers, the court may not usurp the executive authority of the State Building Commission, which must approve the project before the funds may be expended. Three, the $1,600,000 grant was never at issue in the disputed case proceedings before the administrative agency and, therefore, the trial court did not have subject matter jurisdiction over that issue.

The matters at issue arise out of the efforts of the City of Spencer, Tennessee, wanting to upgrade its wastewater treatment facilities. In 2001, the City made a formal application to the Tennessee Department of Environment and Conservation ("Department") for a permit to discharge treated wastewater, including

treated sewage effluent, into a small stream known as Dry Fork Creek. Following receipt of the application, the Department prepared a draft permit and placed it on public notice for the permit applicant and the general public to review. After a comment and hearing period in which the public was afforded the opportunity to participate, the Department granted a permit to the City authorizing it to discharge wastewater into Dry Fork Creek. Being dissatisfied with the issuance of the permit, four environmental groups appealed the Department's decision to the Water Quality Control Board ("Board").[1]

The environmental groups, the Tennessee Environmental Council, The Nashville Grotto of the National Speleological Society, Inc., Public Employees for Environmental Responsibility, and Tennessee Scenic Rivers Association, presented evidence before the Board in an effort to convince the Board to revoke the grant of the initial permit allowing discharge into Dry Fork Creek. The environmental groups claimed the permit was invalid for a number of reasons including the lack of adequate public participation in the permitting process and the State's failure to consider Dry Fork Creek's status as a Tier II stream, which required heightened protection due to that classification.[2] Following a hearing, the Board rendered a tie vote on whether to revoke the permit issued by the Department.[3] As a consequence of the tie vote by the Board concerning whether to revoke the permit, the presiding Administrative Judge ruled as a matter of law that the City was entitled to receive the permit to discharge wastewater into Dry Fork Creek.

Four environmental groups opposing the discharge of wastewater into Dry Fork Creek filed a petition in February 2002 in the Chancery Court for Davidson County seeking judicial review of the Board's decision under Tenn.Code Ann. § 4–5–322 of the Uniform Administrative Procedures Act ("UAPA"). In their Petition for Judicial Review, the environmental groups requested the Davidson County Chancery Court to set aside the Board's decision to grant the wastewater discharge permit to the City. The petitioners also sought temporary injunctive relief in the petition. Finding the petitioners had presented sufficient evidence to show that more likely than not they would prevail on the merits and that irreparable harm would likely occur if the court did not grant an injunction, the court issued a temporary injunction and additionally directed the parties to participate in a judicial settlement conference.

Pursuant to the directive of the Chancellor, the parties participated in a lengthy judicial settlement conference under the supervision of the Third Circuit Court of Davidson County. After days of negotiations, the parties reached an agreement which was memorialized in an Agreed Final Judgment ("Agreed Judgment") dated April 26, 2002. The Agreed Judgment was signed by representatives of the environmental groups, representatives of the City, and representatives of the State of Tennessee. Thereafter, the Chancellor transferred the case to the Third Circuit Court with instructions for the Circuit Court to

---

1. *See* Water Quality Control Act of 1977, Tenn.Code Ann. § 69–3–101, *et seq.; see also* Tenn. Comp. R. & Regs. 1200–4–1.

2. *See* Tenn. Comp. R. & Regs. 1200–4–3–.06.

3. Four of the Board members voted in favor of revoking the permit and four voted against revoking the permit. Initially, the Board voted by a majority to revoke the permit, but after hearing more evidence from the City, the Board voted four to four in a subsequent vote.

supervise the complex settlement the parties had reached.

The complex Agreed Judgment, which is at the center of this appeal, rerouted the discharge from Dry Fork Creek to Lick Branch on a temporary basis and thereafter into the Caney Fork River on a permanent basis. Pursuant to the Agreed Judgment, the City was to construct a wastewater drainage pipe leading into Lick Branch for temporary wastewater discharge and a permanent wastewater discharge pipe leading into the Caney Fork River. In addition to the constructing the discharge pipes, the City would construct a rapid sand filtration system at the sewage discharge plant to more adequately treat the waste discharged in the watershed. The relevant provisions memorialized in the Agreed Judgment provide, in summary:

■ the City may apply for a wastewater discharge permit to discharge treated wastewater from the City's sewage treatment plant into Lick Branch for a period of no longer than four years;

■ the State, through the Governor's Office, would provide funds to pay for the design and construction of a rapid sand filtration system, up to $140,000, to be located at Spencer's Sewage Treatment Plant;

■ upon the Lick Branch wastewater discharge permit becoming final and receipt by the City of the funding from the Governor's Office, the City shall promptly and prior to any discharge from the wastewater treatment plant: (i) construct a rapid sand filtration system, at a cost not in excess of $140,000, to further treat wastewater prior to any discharge in Lick Branch, (ii) construct a discharge pipe to Lick Branch; and (iii) disable the discharge pipe to Dry Fork Creek;

■ the City shall diligently pursue full funding with regard to the discharge permit to the Caney Fork River, for which it applied, and if no permit or funding is in place, the City must investigate alternative discharge methods.

Crucial to the current dispute is the funding of the various aspects of the alternative discharge plans. Pursuant to the Agreed Judgment, "The State, through the Governor's Office, will provide funds to pay for the design and construction of a rapid sand filtration system, up to $140,000." In addition, the Tennessee Department of Transportation (TDOT) planned to widen a local highway and, as a result, was required to implement mitigation measures to offset the impact to the streams resulting from the project. TDOT allocated $750,000 in mitigation funds. Of the $750,000, "the State agrees that a portion of this amount, up to $140,000 [in addition to the $140,000 provided by the Governor's Office for the filtration system] will be used to pay the costs to construct Spencer's [temporary] wastewater discharge pipe ... into Lick Branch...." The remaining $610,000 was allocated for the implementation of environmentally friendly mitigation projects in the Caney Fork watershed, as identified by the Department and the environmental groups.

The 2002 Agreed Judgment provided no funding for construction of a discharge line to carry the wastewater to the river. Instead, the Agreed Judgment provided that the "City will diligently pursue full funding [for a discharge to the Caney Fork River]." After determining that it would need a total of $1,500,000 to construct the discharge line, the City applied for a federal grant from the Economic Development Administration for $1,000,000. The grant, however, required matching funds of half of that amount. To satisfy that obligation,

the City turned to the State, specifically the General Assembly.

Subsequent to the entry of the Agreed Judgment, the General Assembly enacted the "2002 Supplemental Bond Act." 2002 Tenn. Pub. Acts, ch. 852. The 2002 Bond Act authorized the State Funding Board to issue and sell bonds for the purpose of generating funds "to provide for necessary repairs, replacements, additions and betterments of buildings and facilities" and for "making a grant to a governmental entity or not-for-profit organization located in the City of Spencer, if such grant is identified in the Governor's budget, including the budget overview, for the fiscal year 2002–2003 and approved by the State Building Commission." 2002 Tenn. Pub. Acts, ch. 852, § 4(1).

The Governor's 2002–2003 budget identified a capital outlay of $1,500,000 for the "City of Spencer Sewer System." Ultimately, the State Building Commission approved the grant with the understanding that the State funds were not to be used to supplant federal funds available for the project. In November of 2002, the Department of Finance and Administration disbursed the $1,500,000 grant to the City for the purpose of constructing a wastewater discharge line to the Caney Fork River. In March of 2004, the City learned that the federal grant had been denied.[4]

As the project was delayed in the search of funding, the costs of the permanent discharge line dramatically increased from an estimated $1,500,000 to approximately $3,000,000. As a consequence, the City once again returned to the General Assembly to seek even more funding. Recogniz-

ing the importance of the project, the General Assembly added a provision to the 2005 Tennessee Public Acts, which states in pertinent part, "the sum of one million six hundred thousand dollars ($1,600,000) shall be allocated to the Department of Finance and Administration for the purposes of making a grant to the City of Spencer for sewage treatment facilities." 2005 Tenn. Pub. Acts, ch. 502, § 4. Although the funds were appropriated, the Tennessee Department of Finance and Administration refused to disburse the funds to the City because the State Building Commission had not approved the project. Without the approval of the State Building Commission, the Department of Finance and Administration was without authority to disburse the funds.

The culmination of the dispute concerning the matters now at issue occurred on November 22, 2005, during a status conference. It was at this point that the City made an oral motion asking the Circuit Court to compel the State of Tennessee to disburse to the City the $1,600,000 grant.[5] The State objected contending the court did not have jurisdiction over the Department of Finance and Administration or the State Building Commission, and the doctrine of sovereign immunity barred the relief sought. The State also insisted the motion should be denied because the Tennessee Building Commission had not approved the project, and the Department of Finance and Administration could not lawfully disburse the funds without that approval, as mandated by Tenn.Code Ann. § 4–15–101 et seq. ("Building Commission Act"), and the 2005 Bond Act.[6]

---

4. Because the Economic Development Administration denied the City's request for federal funding, the City had the authority to expend the full $1,500,000 approved in the 2002 state grant.

5. The environmental groups joined the City in the Motion.

6. Some of these arguments were asserted initially, and others were asserted in a motion to alter or amend the first order entered, which

After considering the arguments and hearing the parties, the Circuit Court issued an Order on December 16, 2005, in which it ordered the Department of Finance and Administration to make a good faith effort to comply with the Agreed Judgment. Specifically, the court found that it had jurisdiction over "the State of Tennessee," including the Department of Finance and Administration and the State Building Commission. Thereafter, the Department of Finance and Administration and the State Building Commission filed a Motion to Alter or Amend the December 2005 Order contending that the Department of Finance and Administration could not disburse the grant without express approval from the State Building Commission and seeking clarification from the court as to what action it was required to undertake. In a subsequent order, the court denied the State's Motion and ordered the Department of Finance and Administration to start dispersing to the City the proceeds of the grant without the State Building Commission approval. This appeal followed.

The State appeals contending the Circuit Court erred in: (1) asserting jurisdiction over the Department of Finance and Administration and the State Building Commission under the April 26, 2002 Agreed Final Judgment; and (2) finding that the State Building Commission approval is not required to disburse the $1,600,000 grant that the General Assembly allocated to the City.[7]

We have determined that the ruling of the trial court must be overturned for three reasons. One, we find nothing in the Agreed Judgment that requires the State of Tennessee to provide an additional $1,600,000 to the City of Spencer for the construction of a wastewater discharge line to the Caney Fork River. The Agreed Judgment simply does not contain a commitment by the State to provide funding other than the $140,000 for the rapid sand filtration system, which funds have already been disbursed, and the $750,000 for mitigation along Highway 111, which funds have also been disbursed. Two, based upon the separation of powers, the court may not usurp the executive authority of the State Building Commission, the approval of which is a prerequisite to the disbursement of the grant funds in question. Three, the $1,600,000 grant was never at issue in the disputed case proceedings before the administrative agency, and therefore, the trial court did not have subject matter jurisdiction over that issue.

### ANALYSIS

#### THE STATE'S OBLIGATIONS UNDER THE AGREED JUDGMENT

The matters in dispute flow from three orders: the Agreed Judgment dated April 26, 2002; the Order granting the City's oral motion to compel the State to disburse the $1,600,000 grant; and the Order denying the State's motion to alter or amend the previous order, wherein the Court stated its directive that the State disperse the proceeds of the $1,600,000 grant. The second and third of these orders address the rights and responsibilities of the parties set forth in the 2002 Agreed Judgment.

An agreed judgment is in substance a contract of record made by the parties to the agreement. *Third Nat'l Bank v. Scribner*, 212 Tenn. 400, 370

---

granted the City's oral motion to compel disbursement of the funds.

**7.** In April 2006, the Department of Finance and Administration, and the City executed an agreement whereby the Department processed a grant to the City for $450,000 of the $1,600,000.

S.W.2d 482, 486 (1963) (citing 49 C.J.S. Judgments, § 173; 30A Am.Jur. *Judgments* § 144; Gibson's Suits in Chancery 619). It is a contract made final and binding upon the parties to the contract. *Barretsville Bank & Trust Co. v. Bolton,* 182 Tenn. 364, 187 S.W.2d 306, 309 (1945). The general rule as to the effect of a consent decree is that "while a consent judgment and a judgment on the merits are distinguishable, for enforcement purposes they stand on a parity." *Scribner,* 370 S.W.2d at 486 (quoting 30A Am.Jur. *Judgments* § 148). A consent judgment "acquires the incidents of, and will be given the same force and effect as, judgments rendered after litigation." *Id.* (quoting 30A Am.Jur. *Judgments* § 148).

In pertinent part the 2002 Agreed Judgment, the parties' contract, provides:

1. The City may apply for an NPDES permit to discharge treated wastewater from the City's sewage treatment plant to Lick Branch. . . .

. . . .

3. TDEC shall promptly process the NPDES permit applications described herein, . . . Upon the Lick Branch NPDES permit becoming final and receipt by the City of the funding described in paragraph 9, *infra,* the City shall promptly . . .:(1) construct a rapid sand filtration system, at a cost not in excess of $140,000, to further treat wastewater prior to any discharge into Lick Branch, (ii) construct the discharge pipe to Lick Branch, and (iii) disable the discharge pipe to Dry Fork Creek. . . .

. . . .

5. The City has applied for an NPDES permit to discharge to the Caney Fork River. The City will diligently pursue full funding therefor. . . .

. . . .

9. The State, through the Governor's Office, will provide funds to pay for the design and construction of a rapid sand filtration system, up to $140,000, to be located at Spencer's Sewage Treatment Plant. This filtration system will provide additional treatment to the City's wastewater prior to discharge. If the funding for the rapid sand filtration system is not made available, the City of Spencer will not be obligated to build the filtration system.

. . . .

11. Of the $750,000 in mitigation for the Highway 111 project, the State agrees that a portion of this amount, up to $140,000 (in addition to the $140,000 noted in paragraph 9 above), will be used to pay the costs to construct Spencer's wastewater discharge pipe away from Dry Fork Creek, . . . For the approximately $610,000 remaining, the Petitioners will, . . . identify environmentally beneficial projects in the Caney Fork watershed. Upon TDEC finding that the identified projects qualify as mitigation for the Highway 111 impacts, the remaining $610,000 shall be used to carry out those project(s).

. . . .

25. Under no circumstances shall the City be obligated under this agreed final judgment to design, acquire or construct any facilities described herein, other than the berm, unless full funding therefor, which does not have to be repaid, has been provided by others.

■ Three years after the entry of the Agreed Judgment, the Circuit Court entered the first of the two orders compelling the State to disburse the $1,600,000 grant. In the December 16, 2005 Order, the Circuit Court directed the State "to disburse to the City the proceeds of the $1,600,000 grant provided for by Chapter 502 of the Public Acts of 2005" for the City's discharge line to the Caney Fork

River. In that Order, the Circuit Court also made the findings that it had jurisdiction over the State of Tennessee, including the Department of Finance and Administration and the Building Commission, that the State Building Commission Act does not grant the Building Commission authority over the grant, and the 2005 Bond Act does not require that the grant be approved by the Building Commission. The Circuit Court also ordered the State, through its Department of Finance and Administration, to "make a good faith effort to comply with the Agreed Final Judgment." Thereafter, the State filed motions to alter or amend the Order, challenging it on many grounds. Following yet another hearing, the Court, in a very brief Order dated April 24, 2006, found no basis to alter or amend its prior Order. In its April 24 ruling, the Court also ordered the Department of Finance and Administration to "comply with the Court's Order of December 16, 2005, and start dispersing to the City the proceeds of the Grant referred to in that Order."

We are unable to find a legal basis upon which to sustain the December 16, 2005 and April 24, 2006 orders of the Circuit Court. The April 26, 2002 Agreed Judgment, the agreement upon which the City's claim is based, cannot provide the legal basis for the December 16, 2005 order because the Agreed Judgment did not require the State to make $1,600,000 available to the City of Spencer. All the State was obligated to do under the Agreed Judgment was to provide "funds to pay for the design and construction of a rapid sand filtration system, up to $140,000," and $750,000 pursuant to paragraph 11, of which up to $140,000 was to be used to pay the costs to construct Spencer's wastewater discharge pipe away from Dry Fork Creek, and the $610,000 remaining would be spent on environmentally beneficial projects in the Caney Fork watershed identi-

fied by the Petitioners. It is undisputed that the State fulfilled the foregoing obligations.

Stated succinctly, the Agreed Judgment simply does not impose an obligation upon the State to disburse an additional $1,600,000 to the City of Spencer for any purpose. Further, the rights and responsibilities of the parties to the proceeds of the 2005 grant, which arose three years after the entry of the Agreed Judgment, are wholly independent of their respective rights and responsibilities under the Agreed Judgment.

Accordingly, we find no legal basis to sustain the December 16, 2005 Order or the April 24, 2006 Order on the basis of an agreement or agreed judgment.

### SEPARATION OF POWERS

The Tennessee Constitution provides that "[t]he powers of the government shall be divided into three distinct departments: legislative, executive, and judicial." Tenn. Const. art. II, § 1. Article II, Section 2 of our state's Constitution prohibits a person belonging to one of the three distinct departments of government from exercising the powers delegated to another department, except as the Constitution itself directs or permits. *Mayhew v. Wilder*, 46 S.W.3d 760, 773 (Tenn.Ct.App. 2001). This doctrine, the separation of powers doctrine, specifically provides that "[n]o person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." Tenn. Const. art. II, § 2.

Our constitution vests all legislative authority in the General Assembly. Tenn. Const. art. II, § 3. Although the constitution does not specifically define the powers of the General Assembly, as distinguished

from the other two departments, the Supreme Court of Tennessee has stated "[t]he legislative branch has the authority to make, alter, and repeal the law; the executive branch administers and enforces the law; and the judicial branch has the authority to interpret and apply the law." *Mayhew*, 46 S.W.3d at 783 n. 10 (quoting *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 453 (Tenn.1995)). Of further significance is the fact the "General Assembly's power to enact laws is limited only by the explicit and implicit restrictions in the Constitution of Tennessee and the United States Constitution." *Mayhew*, 46 S.W.3d at 784 (citing *Perry v. Lawrence County Election Comm'n*, 219 Tenn. 548, 551, 411 S.W.2d 538, 539 (1967); *Williams v. Carr*, 218 Tenn. 564, 578, 404 S.W.2d 522, 529 (1966); *Beasley v. Cunningham*, 171 Tenn. 334, 338–39, 103 S.W.2d 18, 19 (1937)).

■ One of the significant powers included in the broad grant of power to the legislative branch of our government is the exclusive prerogative to control the expenditure of public moneys. *Mayhew*, 46 S.W.3d at 783 (citing *Peay v. Nolan*, 157 Tenn. 222, 7 S.W.2d 815, 816 (1928); *State ex rel. Weldon v. Thomason*, 142 Tenn. 527, 221 S.W. 491, 494 (1920)). Although our courts have the authority to determine whether legislation comports with constitutional principles, *see Mayhew*, 46 S.W.3d at 784 (citing *Richardson*, 913 S.W.2d at 453); the courts are required by the separation of powers doctrine to respect the General Assembly's considerable legislative discretion, *Mayhew*, 46 S.W.3d at 784 (citing *Helms v. Tenn. Dep't of Safety*, 987 S.W.2d 545, 549 (Tenn.1999); *Riggs v. Burson*, 941 S.W.2d 44, 54 (Tenn.1997)); and to presume that legislative actions are constitutional. *Mayhew*, 46 S.W.3d at 784 (citing *Taylor v. State*, 995 S.W.2d 78, 85 n. 7 (Tenn.1999); *Holder v. Tenn. Judicial Selection Comm'n*, 937 S.W.2d 877, 883 (Tenn.1996)). It is upon these principles that the courts of our state are prohibited from usurping or infringing upon the General Assembly's policy-making role. *Mayhew*, 46 S.W.3d at 784.

The canons of statutory construction guide the court's inquiry into a statute's purpose and effect in order to ascertain its purpose from the plain and ordinary meaning of the language of the statute. *See Westland West Cmty. Ass'n v. Knox County*, 948 S.W.2d 281, 283 (Tenn.1997); *Riggs*, 941 S.W.2d at 54. Therefore, when the words of a statute clearly mean one thing, the courts cannot give them another meaning under the guise of construing them. *See Henry v. White*, 194 Tenn. 192, 250 S.W.2d 70, 72 (1952); *State ex rel. Barksdale v. Wilson*, 194 Tenn. 140, 250 S.W.2d 49, 51 (1952); *Mathes v. State*, 173 Tenn. 511, 121 S.W.2d 548, 550 (1938).

Pursuant to statutory authority, the State Building Commission is empowered to approve all projects involving any improvement to real property funded by public funds in which the State of Tennessee has an interest. Tenn.Code Ann. § 4–15–102(a)(1). Moreover, "no contract for the improvement of real property ... shall be awarded until the plans therefor have been submitted to and approved by the [State Building Commission]." Tenn.Code Ann. § 4–15–102(b)(1). In the 2005 Supplemental Bond Act at issue here, the General Assembly authorized the State Funding Board to issue and sell bonds to fund repairs, replacement, additions and betterments of buildings and facilities. 2005 Tenn. Pub. Acts, ch. 502, Preamble. Section 4 of the Act specifies the amounts and the uses for the bond proceeds, and the Act allocated $1,600,000 to the Department of Finance and Administration for purposes of making a grant to the City of Spencer for "sewage treatment facilities."

*Id.,* § 4. The 2005 Bond Act, however, did not specify the nature, type, design or location of the facilities contemplated for the City of Spencer. Moreover, the Act did not direct the expenditure of the contemplated funds. It merely allocated the sum of $1,600,000 to the Department of Finance and Administration for purposes of making a grant to the City of Spencer.

Of further significance is the fact the 2005 Bond Act recognized the authority of the State Building Commission to "approve" projects involving any improvement to real property. This is evident from the direct reference in Section 5 of the Act[8] to the powers and authority of the Building Commission as provided by Tenn.Code Ann. § 4–15–102. The construction of a discharge pipe to the Caney Fork River obviously involves an improvement to real property. Tenn.Code Ann. § 4–15–102(a)(1), provides, "[t]he [state building] commission has the power and authority ... to approve and supervise all projects involving: Any improvement to real property funded by public or private funds or both in which the state of Tennessee or any of its departments, institutions or agencies has an interest; ...." Accordingly, read in conjunction with one another, Section 5 of the Bond Act and Tenn.Code Ann. § 4–15–102(a)(1), give the State Building Commission express authority to approve or disapprove the proposed wastewater discharge project.

The Building Commission previously approved the construction of the permanent discharge pipe in November 2002. That approval pertained to the project as it existed in 2002; however, the project changed significantly after the 2002 ap-

proval. Section 3.02(D) of the Building Commission's policies and procedures provides that a project shall be *subject to further review* by the Building Commission, *even if previously approved,* "whenever it is proposed that budget, scope, or funding be changed from that originally approved." Subsequent to the Building Commission's 2002 approval of the project, the cost dramatically increased. Thus, the proposed budget changed from that originally approved which necessitates further review and approval by the Building Commission.

The City of Spencer's request for an additional $1,600,000 to fund the project constituted a substantial change from the project as approved in 2002. The Building Commission's approval of the project, as changed, is required, and that approval has not been given. Thus, until the changes in the project have been approved by the Building Commission, the Department of Finance and Administration is without authority to disburse any portion of the $1,600,000 grant. The authority to approve and disburse the grant proceeds is solely vested in the executive branch.

Accordingly, the trial court exceeded its authority when it ordered the Department of Finance and Administration to disburse the $1,600,000 without approval of the project by the State Building Commission.

### SUBJECT MATTER JURISDICTION

In addition to the two foregoing reasons, we have also determined the trial court did not have subject matter jurisdiction over the matters now on appeal. This appeal arises out of the Petition for Judicial Review filed pursuant to Tenn.Code Ann.

---

**8.** Section 5 reads in pertinent part: "The proper authorities ... shall have authority to proceed with the projects authorized herein and for that purpose may ... award contracts to low bidders, all within the provisions of the general law, *expressly including the provisions of Title 4, Chapter 15, Tennessee Code Annotated."* 2005 Tenn. Pub. Acts, ch. 502 § 5 (emphasis added).

§ 4–5–322 of the Tennessee Uniform Administrative Procedures Act ("UAPA"), wherein the petitioners challenged the decision of the Water Quality Control Board approving the issuance of a wastewater discharge permit. The subject of this appeal, however, has nothing to do with the issues presented to the Water Quality Control Board. Instead, the issue on appeal pertains to a subsequent agreement among the parties to address the City's wastewater problems and a grant authorized by the General Assembly more than three years after the Board's hearing. Having determined that judicial review under the UAPA is limited to final decisions in contested cases heard by the administrative agency, and realizing that the matters at issue in this appeal were not part of the contested case and were not heard by the administrative agency, we have concluded the trial court did not have subject matter jurisdiction over the matters on appeal.

### A.

■ A court must have subject matter jurisdiction over a matter for the matter to be adjudicated. *See Meighan v. U.S. Sprint Commc'ns Co.,* 924 S.W.2d 632, 639 (Tenn.1996); *see also Cashion v. Robertson* 955 S.W.2d 60, 63 (Tenn.Ct.App. 1997). "The court's subject matter jurisdiction in a particular circumstance depends on the nature of the cause of action and the relief sought." *Dishmon v. Shelby State Cmty. College,* 15 S.W.3d 477, 480 (Tenn.Ct.App.1999) (citing *Landers v. Jones,* 872 S.W.2d 674, 675 (Tenn.1994)).

■ Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from a legislative act. *See Kane v. Kane,* 547 S.W.2d 559, 560 (Tenn. 1977); *Brown v. Brown,* 198 Tenn. 600, 281 S.W.2d 492, 501 (1955). Thus, courts cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication. *Dishmon v. Shelby State Cmty. College,* 15 S.W.3d 477, 480 (Tenn.Ct.App.1999) (citing *Hicks v. Hicks,* No. 01A01–9309–CH–00417, 1994 WL 108896, at \*2 (Tenn.Ct. App. Mar.30, 1994)); *see also Meighan,* 924 S.W.2d at 639 (holding that subject matter jurisdiction involves a court's power to adjudicate a particular type of controversy). Moreover, the parties cannot confer subject matter jurisdiction on a court by appearance, plea, consent, silence, or waiver. *See Caton v. Pic–Walsh Freight Co.,* 211 Tenn. 334, 364 S.W.2d 931, 933 (1963); *Brown v. Brown,* 281 S.W.2d at 501.

■ Regardless of whether a party raised the issue of subject matter jurisdiction, the appellate court shall consider whether the trial court had jurisdiction over the subject matter. Tenn. R.App. P. 13(b). "When an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment without reaching the merits of the appeal." *Dishmon,* 15 S.W.3d at 480 (citing *J.W. Kelly & Co. v. Conner,* 122 Tenn. 339, 123 S.W. 622, 637 (1909)).

■ Whether a court lacks subject matter jurisdiction presents an issue of law. Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal–Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn.1999).

### B.

■ The Chancery Court's jurisdiction to entertain an appeal by the petitioners of the Board's decision arises under Tenn. Code Ann. § 4–5–322 of the Tennessee Uniform Administrative Procedures Act (Act). Significant to the matters at issue, judicial review under the Act is limited to final decisions in "contested cases." *See*

Tenn.Code Ann. § 4–5–322(a)(1); *see also* Ben H. Cantrell, Judicial Review under the Tennessee Uniform Administrative Procedures Act–An Update, 13 Mem. St. U. L. Rev. 589, 595 (1983). The definition of a "contested case," which is stated in the Act, is:

> a proceeding, including a declaratory proceeding, in which the legal rights, duties or privileges of a party *are required by any statute or constitutional provision to be determined by an agency* after an opportunity for a hearing. Such proceeding may include ... the granting or denial of licenses, permits or franchises where the licensing board is not required to grant the licenses, permits or franchises upon the payment of a fee or the finding of certain clearly defined criteria. ...

Tenn.Code Ann. § 4–5–102(3) (emphasis added).

The Act further provides that "[a] person who is aggrieved by a final decision in a *contested case* is entitled to judicial review under this chapter, which shall be the only available method of judicial review...." Tenn.Code Ann. § 4–5–322(a)(1). The Act, however, is inapplicable to proceedings that do not fit within its adjudicatory definitions. *See National Health Corp. v. Snodgrass*, 555 S.W.2d 403, 405–06 (Tenn.1977); *Mid–South Indoor Horse Racing, Inc. v. Tenn. State Racing Comm'n*, 798 S.W.2d 531, 536 (Tenn.Ct.App.1990). Thus, judicial review under Tenn.Code Ann. § 4–5–322 is not available if the proceeding to be reviewed is not a contested case. *See Mid–South Indoor Horse Racing, Inc.*, 798 S.W.2d at 536; *see also Dishmon*, 15 S.W.3d at 481. Accordingly, in a proceeding initiated by a Petition for Judicial Review, the trial court lacks subject matter jurisdiction of a matter that does not constitute a contested case under Tenn.Code Ann. § 4–5–102(3). *See id.* at 481–82.

In *Dishmon v. Shelby State Cmty. College*, the Dean of Student Affairs at Shelby State, Mr. Dishmon, was fired for poor performance. When Mr. Dishmon contested his termination, his case went before an administrative law judge. Following a hearing, the administrative law judge ordered Shelby State to reinstate Mr. Dishmon. While the matter was still within the jurisdiction of the administrative law judge, the President of Shelby State voluntarily took it upon himself to review the matter. During the same period of time, and while the matter was still pending before the administrative law judge, Mr. Dishmon made a demand for back pay in addition to reinstatement. Thereafter, the President of Shelby State decided to reinstate Mr. Dishmon instead of appealing the matter. Neither the President of Shelby State nor the administrative law judge addressed the belated demand for back pay.

Being dissatisfied, Mr. Dishmon filed a petition for judicial review under Tenn. Code Ann. § 4–5–322 contending he was entitled to back pay. The trial court concluded that the administrative law judge and Shelby State had arbitrarily ignored Mr. Dishmon's request for back pay and awarded Mr. Dishmon three years of back pay, which decision Shelby State appealed. This Court reversed the award of back pay on the grounds that the trial court did not have subject matter jurisdiction under the UAPA, reasoning the matter at issue, Mr. Dishmon's demand for back pay, was not a contested case. As we explained:

> According to Tenn.Code Ann. § 4–5–102(3) (1998), a "contested case" is a proceeding in which the legal rights, duties or privileges of a party are required by any statute or constitutional provision to be determined by an agency

after an opportunity for a hearing. To determine whether any particular dispute is a contested case under the Uniform Administrative Procedures Act, we must examine the applicable statutes and constitutional provisions to see if any of them provide that a complainant's rights must only be determined after an opportunity for a hearing. *See William P. Kratzke, A Review of Contested Case Provisions of the Tennessee Uniform Administrative Procedures Act,* 13 Mem. St. U.L.Rev. 551, 554 (1983). We have found no provision in the United States Constitution, the Constitution of Tennessee, or the applicable statutes that requires Shelby State to provide its deans with a hearing in employment disputes.

Shelby State is part of the community college system. *See* Tenn.Code Ann. § 49–8–101(a) (1996). Its management and control is vested in the Board of Regents. See Tenn.Code Ann. § 49–8–101(b). Among the Board of Regents' statutory duties is the duty to establish a formal grievance procedure for the support staff of the community college system which affords them a contested case hearing with regard to demotions, suspensions, suspensions without pay, or terminations for cause. See Tenn.Code Ann. § 49–8–117(b)(3) (1996). According to Tenn.Code Ann. § 49–8–117(a)(2), "support staff" includes employees "who are neither faculty nor executive, administrative or professional staff of the ... community college."

Mr. Dishmon, as Dean of Student Affairs, was not a support staff employee at Shelby State, but rather was a member of the school's administration. (footnote omitted.) Because Mr. Dishmon was not a support staff employee, he had no statutory right to a contested case hearing regarding the termination of his employment contract. His employment dispute with Shelby State, accordingly, did not constitute a contested case under Tenn. Code Ann. § 4–5–102(3).

The record indicates that Shelby State appealed the administrative law judge's July 1994 reinstatement order to its interim president. The interim president reviewed the case and entered a final order approving Mr. Dishmon's reinstatement and the payment of his legal expenses. That determination appears to be the final step of the grievance procedure for administrative employees like Mr. Dishmon. Rather than treating his claim for back pay as a grievable matter, Mr. Dishmon should have pursued it as damages for breach of his employment contract by filing a claim with the Tennessee Claims Commission in accordance with Tenn. Code Ann. § 9–8–307(a)(1)(L) (Supp.1998).

Mr. Dishmon's demand for back pay from Shelby State was not a contested case. Accordingly, he did not have a right to seek judicial review of the interim president's decision in the trial court under Tenn.Code Ann. § 4–5–322. The trial court should have dismissed Mr. Dishmon's petition for lack of subject matter jurisdiction even if Shelby State did not assert the defense.

*Dishmon,* 15 S.W.3d at 481–82.

The contested case from which this appeal lies was filed by the Tennessee Environmental Council, the Nashville Grotto of the National Speleological Society, Inc., Public Employees for Environmental Responsibility, and Tennessee Scenic Rivers Association. The subject of the contested case was whether the City's permit should be revoked due to the alleged lack of adequate public participation in the permitting process and the State's failure to consider Dry Fork Creek's status as a Tier II stream. Funding of the project, specifical-

ly whether the State is obligated to disburse $1,600,000 to fund the project, or for that matter any amount of money for any project, was not part of the contested case before the agency. As we learned in *Dishmon*, because the claim presented on appeal was not part of a contested case, it must be dismissed for lack of subject matter jurisdiction.

### C.

There is another fatal flaw to the unorthodox proceedings in the trial court. That flaw arises from the City's attempt to join a new cause of action, essentially a claim for breach of contract based on the Agreed Judgment, to an appeal of an administrative decision to issue a permit. It is a practice that has been condemned by this court on more than one occasion. *See Winkler v. Tipton County Bd. of Educ.*, 63 S.W.3d 376, 383 (Tenn.Ct.App.2001); *Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 386–87 (Tenn.Ct.App.1983).

In *Winkler*, the petitioner, a tenured teacher, was charged with unprofessional conduct. Following a hearing before the School Board, the teacher was suspended. She appealed the adverse ruling first to the Chancery Court and then to this court. On appeal to this court, the petitioner asserted, *inter alia*, that the Chancellor erred: (1) in upholding the decision of the school board to suspend the petitioner; and (2) in not allowing the petitioner to combine in a single action her appeal of the suspension and a 42 U.S.C. § 1983 complaint. Before considering the issue of the teacher's suspension, the *Winkler*

court condemned the growing practice of joining an original action with an administrative appeal. Following its analysis, the court concluded "there are both legal and practical reasons why such a joinder is improper." *Winkler*, 63 S.W.3d at 383.

The *Winkler* court relied heavily on the analysis set forth in *Goodwin*, which it quoted at length.[9] The pertinent part of *Goodwin* which was quoted in *Winkler* reads as follows:

> We wish to heartily condemn that which appears to us to be a growing practice, i.e., the joinder of an appeal with an original action and the simultaneous consideration of both at the trial level. *This Court is of the firm opinion that such procedure is inimical to a proper review in the lower certiorari Court and creates even greater difficulties in the Court of Appeals. The necessity of a separation of appellate review of a matter and trial of another matter ought to be self evident.* In the lower Court one is reviewed under appropriate Appellate rules and the other is tried under trial rules. In this Court our scope of review is dependent upon the nature of a proceeding. In this case one matter would be limited by rules of certiorari review and the other would be reviewed under 13(d), Tennessee Rules of Appellate Procedure. Like water and oil, the two will not mix.

*Winkler*, 63 S.W.3d at 383 (emphasis added) (quoting *Goodwin*, 656 S.W.2d at 386).

For the foregoing reasons, we have concluded the City's new and original cause of

---

9. In *Goodwin*, the petitioner, Elsie Goodwin, was terminated from her employment as a Home Health Aid with the Metropolitan Board of Health. The decision to terminate Mrs. Goodwin was upheld following administrative hearings. In her Petition for Certiorari, Mrs. Goodwin sought additional relief by requesting a Declaratory Judgment to have certain regulations of the Board of Health declared unconstitutional. The Chancellor dismissed the claim for Declaratory Judgment, which decision was affirmed by this court on appeal. *See Goodwin v. Metropolitan Bd. of Health*, 656 S.W.2d 383 (Tenn.Ct. App.1983).

action based on the Agreed Judgment must be dismissed.

### In Conclusion

For the reasons stated above, we vacate the trial court's orders pertaining to the disbursement of the $1,600,000 grant and remand with costs of appeal assessed against the City of Spencer, Tennessee.