IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 25, 2011 Session

# BANCORPSOUTH BANK
v.
# 51 CONCRETE, LLC & THOMPSON MACHINERY COMMERCE CORPORATION

**Appeal from the Chancery Court of Shelby County**
**No. CH-09-1092-1   Walter L. Evans, Chancellor**

**No. W2011-00505-COA-R3-CV - Filed April 16, 2012**

This is a conversion case.  The appellant bank perfected its security interest in collateral for a loan by filing a UCC-1 statement.  The debtor subsequently sold the collateral to appellee third parties, representing that there were no liens on the collateral.  The appellee third parties later sold the collateral.  The debtor defaulted on the loan to the appellant bank, and the bank obtained a default judgment against the debtor.  The debtor then filed bankruptcy.  The appellant bank filed this lawsuit against the appellee third parties for conversion, seeking the proceeds from the sale of the collateral.  The trial court dismissed the case for lack of subject matter jurisdiction, holding that the bankruptcy court had exclusive jurisdiction.  The trial court also adjudicated the bank's claims for punitive damages and attorney fees.  The bank now appeals.  We reverse the trial court's holding on its subject matter jurisdiction, vacate its rulings on the claims for attorney fees and punitive damages, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Vacated in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Jeffrey D. Germany and H. Chase Pittman, Memphis, Tennessee for Plaintiff/Appellant, BancorpSouth Bank.

W. Clark Washington and Christy F. Washington, Memphis Tennessee for Defendant/Appellee, 51 Concrete, LLC.

Scott A. Frick, Memphis, Tennessee for Defendant/Appellee, Thompson Machinery Commerce Corporation.

## OPINION

### FACTS AND PROCEEDINGS BELOW

In June 2006, John Chorley ("Chorley") executed a promissory note and security agreement in favor of the Plaintiff/Appellant BancorpSouth Bank ("BancorpSouth") in exchange for a loan of $75,585.95. The security agreement gave BancorpSouth a security interest in "all of the Property described . . . wherever the Property is or will be located, and all proceeds and products of the Property." The loan was secured by three pieces of equipment: a bulldozer, an excavator, and a backhoe. The security agreement describes the property generally as "all equipment," and states that it "covers the above collateral, whether now owned or hereinafter acquired, together with all supporting obligations, proceeds, products . . . . The inclusion of proceeds does not authorize debtor to sell or trade the above described property." The next day, BancorpSouth filed a UCC-1 financing statement on the secured equipment with the Tennessee Secretary of State.

In August 2006, Chorley purchased a new bulldozer from Defendant/Appellee Thompson Machinery Commerce Corporation ("Thompson"). He traded the secured bulldozer in exchange for an $18,000 cash discount on the new bulldozer. Chorley affirmatively represented to Thompson that there were no liens, debts, or encumbrances on the trade-in bulldozer, and that it was his sole property. Shortly thereafter, Thompson sold the secured bulldozer to a third party for $18,500.

In December 2006, Chorley purchased a new trackhoe from Thompson. In doing so, Chorley traded in the secured excavator and received a trade-in credit of $42,500 toward the purchase of the new trackhoe. Chorley made similar misrepresentations to Thompson that the trade-in excavator was not subject to any debts or encumbrances. Thompson then sold the secured excavator to the same third party for the amount of Chorley's trade in. Thompson did not perform a UCC records check on either the bulldozer or the excavator traded in by Chorley.

-2-

In June 2007, Chorley gave Defendant/Appellee 51 Concrete, LCC ("51 Concrete") possession of the secured backhoe in exchange for a $23,000 credit against an existing debt Chorley owed to 51 Concrete. This secured backhoe was subsequently sold by 51 Concrete for $23,000, which was applied to Chorley's account at 51 Concrete. After the $23,000 credit was combined with a loan from another bank, Chorley received a lien waiver in which 51 Concrete waived any further claims it had against Chorley on his debt.

In May 2008, Chorley defaulted on his obligations to BancorpSouth under the June 2006 security agreement. As a result, BancorpSouth filed a lawsuit against Chorley. In July 2008, BancorpSouth received a default judgment against Chorley in the amount of $55,703.37, with post-judgment interest.

After acquiring the default judgment against Chorley, BancorpSouth made demand on Thompson for the $61,000 it received for the sale of the secured bulldozer and excavator. It made a similar demand against 51 Concrete for the $23,000 in proceeds realized from the sale of the secured backhoe. Both Thompson and 51 Concrete acknowledge receiving demand letters; however, no proceeds were surrendered by either party at that time.

In May 2009, Chorley filed a petition in the United States Bankruptcy Court for the Western District of Tennessee, seeking bankruptcy protection under Chapter 7. By that time Chorley's debt to BancorpSouth, including post-judgment interest, totaled $60,561.94. Neither Thompson nor Concrete 51 were listed as creditors by Chorley in his bankruptcy filing, and neither filed an objection to his bankruptcy petition. In December 2009, Chorley was granted a discharge under Chapter 7.

Meanwhile, shortly after Chorley filed his bankruptcy petition, BancorpSouth filed the instant lawsuit in the Shelby County Chancery Court ("trial court") against Thompson and 51 Concrete. The complaint sought money damages, attorney fees, and punitive damages for conversion and for voiding BancorpSouth's security interest in the secured equipment. After some delay, both Thompson and 51 Concrete answered, denying BancorpSouth's allegations. Discovery ensued.

The trial court conducted a bench trial on September 15, 2010. After hearing the testimony of four witnesses, the trial court presented counsel for both sides with approximately nineteen questions. The parties were asked to submit stipulations and contentions, as well as proposed findings of facts and conclusions of law. All parties did so. In its post-trial submission, 51 Concrete argued that the trial court lacked jurisdiction because BancorpSouth failed to

request a lift of the automatic stay in Chorley's bankruptcy proceeding.[1] Thompson's post-trial submission asserted that proceeds from the sale of the collateral that exceeded BancorpSouth's judgment against Chorley should have been included in Chorley's bankruptcy estate. On this basis, Thompson argued that the bankruptcy trustee had an interest in the excess proceeds and BancorpSouth should have sought relief from the automatic bankruptcy stay prior to filing the action against Thompson and 51 Concrete.

On January 5, 2011, the trial court entered an order. The trial court found that the collateral securing BancorpSouth's loan to Chorley was worth more than the total amount owed by Chorley to BancorpSouth. Based on this, the trial court found that Chorley had an interest in the proceeds from the sale of the collateral, and therefore the proceeds from the sale of that collateral were part of Chorley's bankruptcy estate pursuant to 11 U.S.C. § 541. The trial court found that the automatic bankruptcy stay from Chorley's bankruptcy prohibited BancorpSouth from proceeding against Chorley or against property of the bankruptcy estate, and the bankruptcy trustee was the proper party to bring the claims asserted by BancorpSouth against Thompson and 51 Concrete. Consequently, it held that BancorpSouth's claims fell within the exclusive jurisdiction of the bankruptcy court. On that basis, the trial court concluded that it did not have subject matter jurisdiction over BancorpSouth's claims. It dismissed without prejudice BancorpSouth's claims against the proceeds from the sale of the collateral.

After holding that it lacked subject matter jurisdiction over BancorpSouth's claims to the proceeds, the trial court went on to adjudicate BancorpSouth's claims for attorney fees and punitive damages. On the issue of attorney fees, the trial court concluded that even if it had subject matter jurisdiction to award such fees to BancorpSouth, there was neither a contractual nor a statutory basis for doing so.

With respect to punitive damages, the trial court stated that the expert testimony submitted at trial showed that Chorley sold the collateral to Thompson and 51 Concrete at a time when UCC searches were not routinely performed in the heavy equipment industry. It also found that, had the proceeds been turned over by Thompson and 51 Concrete to anyone other than the bankruptcy trustee, it would have been in violation 11 U.S.C. § 542. On this basis, the trial court held that BancorpSouth had failed to establish conduct by Thompson and 51 Concrete that merited punitive damages. BancorpSouth now appeals.

---

[1]The record indicates that BancorpSouth received its default judgment against Chorley in July 2008, well before Chorley filed his bankruptcy petition in May 2009.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, BancorpSouth argues that the trial court erred in ruling that it was not entitled to recover compensatory damages, attorney fees and litigation expense from Thompson and 51 Concrete's proceeds from the sale of the collateral, even though BancorpSouth held an attached and perfected security interest in the collateral. BancorpSouth also contends that the trial court erred in ruling that BancorpSouth was not entitled to recover punitive damages from Thompson and 51 Concrete.

The issue of whether a trial court lacked subject matter jurisdiction is a question of law; therefore it is reviewed *de novo*, with no presumption of correctness. ***Morgan Keegan & Co. v. Smythe***, No. W2010-01339-COA-R3-CV, 2011 WL 5517036, at *3; 2011 Tenn. App. LEXIS 613, at *11 (Tenn. Ct. App. Nov. 14, 2011); ***Tenn. Envtl. Council v. Water Quality Control Bd.***, 250 S.W.3d 44, 55 (Tenn. Ct. App. 2007). Findings of fact made by the trial court are reviewed *de novo*, with a presumption of correctness unless the preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d) (2011).

With respect to the disallowance of attorney fees by the trial court, the appellate court will not interfere with a trial court's decision regarding attorney fees except upon a clear showing of abuse of discretion. ***Taylor v. Fezell***, 158 S.W.3d 352, 359 (Tenn. 2005) (quoting ***Aaron v. Aaron***, 909 S.W.2d 408, 411 (Tenn. 1995)). A trial court abuses its discretion when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001).

## ANALYSIS

BancorpSouth argues first that the trial court erred in not awarding it compensatory damages arising from the sale of its collateral by Thompson and 51 Concrete. The trial court found that BancorpSouth was precluded from asserting a claim against the proceeds from the sale of the collateral because Chorley, and thus the bankruptcy trustee, had an interest in the proceeds. Consequently, the proceeds were then part of Chorley's bankruptcy estate. In order to assert a claim against the proceeds, the trial court held, BancorpSouth was required to first obtain relief from the bankruptcy automatic stay; since BancorpSouth failed to do so, its action against Thompson and 51 Concrete was in violation of bankruptcy statutes. On this basis, the trial court held that the bankruptcy court had exclusive jurisdiction, and that the trial court lacked subject matter jurisdiction to adjudicate BancorpSouth's claim against the proceeds.

Thompson and 51 Concrete both argue that the trial court's ruling is correct. Following the reasoning of the trial court, 51 Concrete argues that the trial court lacked jurisdiction over BancorpSouth's claim against the proceeds from the sale of the collateral because BancorpSouth failed to file a petition for relief from the automatic stay provision contained in 11 U.S.C. § 362, before filing this conversion action. 51 Concrete contends that the bankruptcy court had exclusive jurisdiction over all of the property of debtor Chorley, but does not specifically explain what property of Chorley would have been part of the bankruptcy estate.

Thompson contends that the trial court's ruling is correct because "the cause of action being asserted concerned property in which the Bankruptcy Trustee had a legal or equitable interest." Thompson notes that the combined proceeds from the sale of all three pieces of secured equipment totaled approximately $23,000 more than BancorpSouth's judgment against Chorley. From this, Thompson reasons that Chorley and the bankruptcy trustee had a legal and/or equitable interest in the surplus proceeds, so the trial court correctly held that the matter fell within the exclusive jurisdiction of the bankruptcy court.

To analyze this issue, we must examine the relevant bankruptcy statutes and determine whether Chorley's bankruptcy trustee had any interest in the proceeds from the sales of the collateral for Chorley's debt to BancorpSouth. As rightly noted by the trial court, the bankruptcy court has exclusive jurisdiction of all property of the debtor, wherever located, as of the commencement of the bankruptcy case, and of property of the bankruptcy estate. 28 U.S.C. 1334(e)(1). Under 11 U.S.C. § 541(a), the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Therefore, we must determine if Chorley retained an interest in the proceeds from the sale of the collateral by Thompson and 51 Concrete to third party buyers when he filed his bankruptcy petition in May 2009.

From our review of the record, we find no indication that Chorley retained any interest in any of the items of collateral after they were sold to 51 Concrete and Thompson in 2006 and 2007. Rather, the record reflects that Chorley transferred full ownership of the equipment to Thompson and 51 Concrete. Chorley was given value for the secured collateral in the form of either trade-in credit on another piece of equipment or credit against an existing indebtedness. Both Thompson and 51 Concrete sold the collateral to a third party for roughly the amount of value that had been given to Chorley. Therefore, nothing in the record indicates that Chorley retained any interest in the secured equipment after it was transferred to 51 Concrete and to Thompson.

In the alternative, Thompson argues that Chorley's discharge in bankruptcy extinguished BancorpSouth's right to file this action as to the proceeds from the sale of the collateral. We disagree.

While Chorley's discharge in bankruptcy eliminated Chorley's personal liability for his debt to BancorpSouth, a bankruptcy discharge does not extinguish the debt itself. *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004); *In re Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993); *In re Morris*, 430 B.R. 824, 828 (Bankr. W.D. Tenn. 2010); *In re Castle*, 289 B.R. 882, 886 (Bankr. E.D. Tenn. 2003). The United States Supreme Court has explained: "a bankruptcy discharge extinguishes only one mode of enforcing the claim – namely, an action against the debtor *in personam* – while leaving intact another – namely, an action against the debt *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); *In re Holloway*, 81 F.3d 1062, 1063 n.1 (11th Cir. 1996); *see also In re Wagner*, 342 B.R. 766, 770 (Bankr. E.D. Tenn. 2006) ("a lien created prior to the bankruptcy to secure the debt will survive the bankruptcy discharge" and a "discharge of personal liability does not extinguish a lien."). A bankruptcy discharge does not prevent a secured creditor from enforcing its security interest if the underlying debt remains unpaid. *Chase Manhattan Mortg. Corp. v. Street,* No. W2007-02553-COA-R3-CV, 2010 WL 1462544, at *2 (Tenn. Ct. App. Apr. 14, 2010). Therefore, we must reject this argument.

Thompson and 51 Concrete argue that Chorley's bankruptcy estate would have had an interest in any proceeds from the sale of the collateral that exceeded the amount of BancorpSouth's judgment against Chorley. Thompson notes that, under the Uniform Commercial Code ("UCC"), a secured party is generally required to return the surplus proceeds from the sale of collateral in the a designated order of priority. Tenn. Code Ann. § 47-9-608(a)(2001). After payment of other listed obligations, the statute states that the "secured party *shall account to and pay a debtor for any surplus*, and the obligor is liable for any deficiency." Tenn. Code Ann. § 47-9-608(a)(4)(emphasis added). However, as pointed out by BancorpSouth, the UCC defines debtor as "a person having an interest, other than a security interest or other lien, in the collateral . . . ." Tenn. Code Ann. § 47-9-102(28)(A). After transferring full ownership of the collateral to 51 Concrete and Thompson, Chorley retained no interest in it. Therefore, this argument is without merit.

For all of these reasons, we must conclude that the trial court erred in finding that it lacked subject matter jurisdiction to adjudicate BancorpSouth's claims against Thompson and 51 Concrete.

The trial court's holding as to subject matter jurisdiction explicitly applied to BancorpSouth's claims for compensatory damages, attorney fees, and legal expenses. Although the record is somewhat unclear as to whether the trial court held that it lacked subject matter jurisdiction

as to the punitive damages claim, we presume that it did because there would be no basis for the trial court to have subject matter jurisdiction over BancorpSouth's claim for punitive damages if it did not have jurisdiction over the other claims. Although it held that it lacked subject matter jurisdiction, the trial court issued alternative rulings on BancorpSouth's claim for attorney fees and legal expenses, and its claim for punitive damages. In light of our holding that the trial court in fact had subject matter jurisdiction over the entire case, we will address the trial court's alternative holdings on attorney fees and legal expenses, and on punitive damages.

### Attorney Fees and Legal Expenses

On appeal, BancorpSouth notes that the proceedings in the trial court below were bifurcated, and it had not yet put on proof of its legal fees and expenses. However, in its final order, the trial court held in the alternative that BancorpSouth had no basis for seeking attorney fees. On appeal, BancorpSouth asserts that this was error.

In its alternative holding on attorney fees and reasonable legal expenses, the trial court held that BancorpSouth was not entitled to attorney fees because neither Thompson nor 51 Concrete entered into a contract with BancorpSouth that provided for such fees, and there was no statutory basis for an award of attorney fees. BancorpSouth argues on appeal that it has both a statutory and contractual basis to seek an award of attorney fees and reasonable legal expenses incurred to enforce its security interest in the proceeds from the sale of the collateral.

As the statutory basis for its claim for attorney fees and legal expenses, BancorpSouth relies on a provision of the UCC. Section 47-9-607(d), entitled "Collection and enforcement by secured party," provides: "A secured party may deduct from the collections made pursuant to subsection (c)[2] reasonable expenses of collection and enforcement, including reasonable attorney's fees and legal expenses incurred by the secured party." Tenn. Code Ann. § 47-9-607(d) (2001). The comments to this section state that the phrase "reasonable attorney's fees and legal expenses" includes "only those fees and expenses incurred in proceeding against account debtors or other third parties." Tenn. Code Ann. § 47-9-607, cmt.10. The comments state further that the "secured party's right to recover these expenses from collections arises automatically under this section." Tenn. Code Ann. § 47-9-607, cmt.10. We agree with BancorpSouth that, in this conversion action, it may rely on these UCC provisions to seek attorney fees and legal expenses against 51 Concrete and Thompson. ***See First Tenn. Prod.***

---

[2]Subsection (c) states that "[a] secured party shall proceed in a commercially reasonable manner if the secured party . . . undertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral. . . ." Tenn. Code Ann. § 47-9-607(c).

***Credit Assoc. v. Gold Kist Inc***. 653 S.W.2d 418, 419 (Tenn. Ct. App. 1983) (action under the UCC when plaintiff held security interest in soybean crop allegedly converted by third party defendant purchaser); ***Mammoth Cave Prod. Credit Assoc. v. Oldham***, 569 S.W.2d 833 (Tenn. Ct. App. 1977) (applying UCC principles in a conversion case involving secured tobacco crops).

As the contractual basis for its claim for attorney fees and legal expenses from Thompson and 51 Concrete, BancorpSouth relies on the security agreement executed by Chorley. The security agreement executed by Chorley clearly states that any proceeds from collections or disposition will be applied first to BancorpSouth's "expenses of enforcement, which include reasonable attorneys' fees and legal expenses to the extent not prohibited by law. . . ." Under Section 47-9-201, "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." Tenn. Code Ann. § 47-9-201(a) (2001). Thus, the provisions in the security agreement on attorney fees and legal expenses would be applicable to 51 Concrete and Thompson.[3] Accordingly, we must respectfully disagree with the trial court's alternative holding that BancorpSouth had neither a statutory nor a contractual basis to assert a claim for attorney fees and legal expenses expended to enforce its security interest against Thompson and 51 Concrete.

## Punitive Damages

On appeal, BancorpSouth argues that the evidence at trial establishes clearly and convincingly that it is entitled to punitive damages. ***Hodges v. S.C. Toof & Co.***, 833 S.W.2d 896, 901 (Tenn. 1992)***; Barrett v. Vann***, No. E2006-01283-COA-R3-CV, 2007 WL 2438025, at *15; 2007 Tenn. App. LEXIS 561, at *41 (Tenn. Ct. App. Aug. 29, 2007). Thompson notes that, in light of the trial court's finding that it did not have subject matter jurisdiction, the trial court refrained from making findings of fact and conclusions of law on the conversion claim, some of which might affect the trial court's holding on punitive damages, as well as the holding on attorney fees and legal expenses. As a result, Thompson argues, this Court should vacate the trial court's alternative holdings on punitive damages, and on attorney fees and legal expenses, and remand the case to the trial court for further proceedings on all claims. We agree with Thompson. We decline to address whether the evidence shows that BancorpSouth is entitled to either punitive damages or attorney fees and legal expenses, leaving these issues for the trial court on remand.

---

[3]Thompson notes that BancorpSouth did not include a copy of the security agreement in its UCC-1 filing with the Secretary of State. Thompson also correctly acknowledges that inclusion of the agreement in the UCC-1 was not required to provide notice. *See* Tenn. Code Ann. § 47-9-502(a).

**CONCLUSION**

We reverse the trial court's holding that it did not have subject matter jurisdiction over this matter. We reverse the trial court's holding that BancorpSouth had no basis to recover attorney fees and legal expenses. We vacate the trial court's holding that BancorpSouth is not entitled to attorney fees, legal expenses or punitive damages, and direct the trial court to reconsider these issues as part of the proceedings on remand. All other issues raised on appeal are pretermitted.

The decision of the trial court is reversed in part, vacated in part, and remanded. Costs on appeal are assessed equally one-half against Appellee 51 Concrete, LLC and one-half against Appellee Thompson Machinery Commerce Corporation, for which execution may issue if necessary.

_____

HOLLY M. KIRBY, JUDGE