IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 14, 2015 Session

**IN RE AVERY B.**

**Appeal from the Juvenile Court for Tipton County**
**No. 08JV10382     William A. Peeler, Judge**

_____

**No. W2014-01974-COA-R3-JV – Filed July 2, 2015**
_____

This appeal arises from a custody dispute in the Juvenile Court of Tipton County. Because the order appealed from is not a final judgment, we dismiss the appeal for lack of subject matter jurisdiction.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Rachel L. Lambert, Arlington, Tennessee, for the appellant, M. K. B.

Mitchell D. Moskovitz and Adam N. Cohen, Memphis, Tennessee, for the appellee, C.C.

**MEMORANDUM OPINION[1]**

**Background and Procedural History**

The parties in this case are unmarried parents to the minor child at issue, Avery B.

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:
This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

("Avery").[2]  On December 22, 2008, approximately a month after Avery's birth, Mother filed a petition for child support and medical expenses in the Juvenile Court of Tipton County.  Father responded on December 23, 2008, by filing a motion for genetic testing. Genetic testing later confirmed that Father was the biological parent of Avery, and initially, the parties were able to reach an agreement as to parenting issues.  On March 26, 2010, the trial court approved an agreed permanent parenting plan that designated Mother as the primary residential parent.  Father was awarded specified parenting time under the plan and was also ordered to pay $1,533.00 in monthly child support. Unfortunately, whatever peace was achieved through this parenting plan did not last.

On December 18, 2012, Father filed a petition to modify the parties' parenting plan.  His petition averred that Mother's mental capacity impeded her ability to properly care for Avery and also alleged that Mother had engaged in a pattern of behavior that alienated Avery from Father.  In particular, Father claimed that Mother had made numerous false allegations that Father had sexually abused Avery.  Father asserted that these allegations had resulted in a substantial decrease in his parenting time with Avery due, in part, to investigations of Father by the Department of Children's Services ("DCS") at the instigation of Mother.  On January 8, 2013, Father filed a petition for criminal contempt against Mother.  Father's contempt petition was predicated on Mother's alleged failure to honor Father's holiday parenting time.

On March 28, 2013, the trial court entered a consent order adjudicating Father's petitions.  Although the trial court did not alter its designation of Mother as Avery's primary residential parent, it did approve an agreed parenting plan that afforded Father increased parenting time.  Father's petition for criminal contempt was dismissed without prejudice.  As before, the resolution of the litigation brought only temporary peace between the parties.

On December 16, 2013, Mother filed a pleading styled "Emergency Petition for Injunction and Petition to Modify the Previous Order of the Court to Suspend Father's Parenting Time and For Father to Receive Supervised Parenting Time."  The petition alleged that Avery had made recent disclosures of sexual abuse committed by Father and expressed general concern for Avery's welfare.  The petition requested that the trial court immediately suspend Father's parenting time or enter an order imposing conditions on his parenting time for Avery's care and protection.  The petition also prayed that Father's parenting schedule be modified after a hearing, consistent with Avery's best interest.

Father responded to Mother's emergency petition on December 19, 2013.  In his response, Father submitted that Mother had a history of making false allegations against him regarding his conduct towards Avery.  He further stated that DCS had never found

---

[2] In order to protect the anonymity of minor children, the Court, in its discretion, may elect to use initials for the children, their parents, and others.  *K.B.J. v. T.J.*, 359 S.W.3d 608 n.1 (Tenn. Ct. App. 2011).

any evidence that Avery had been sexually abused. Contemporaneous with the filing of his response, Father filed his "Emergency Petition to Modify Parenting Plan, for Criminal Contempt, for Injunctive Relief, and for Supervised Parenting Time." The petition recounted Mother's alleged history of making false allegations against Father and averred that Mother's behavior reflected a pattern of mental instability. The petition stated that Mother should be required to seek long-term therapy and requested that her parenting time with Avery be supervised. Father contended that it was in Avery's best interest to designate him as the primary residential parent. Moreover, he alleged that Mother should be held in criminal contempt for willfully refusing to allow Father to exercise his parenting time.

A hearing on the emergency aspects to the parties' petitions was held on December 19, 2013. On January 21, 2014, the trial court entered an order finding that there was insufficient evidence to sustain Mother's emergency requests for relief. As a result, the trial court declined to suspend Father's parenting time or otherwise require that it be supervised. Other matters, however, were reserved for future adjudication.

A hearing on Father's petition to modify occurred over three separate dates in May and June 2014. The case was taken under advisement following trial. On September 4, 2014, the parties returned to court at which time the trial judge made an oral ruling that Father should be designated as the primary residential parent for Avery. A written order memorializing this ruling was subsequently entered on September 9, 2014. In pertinent part, the trial court's order stated as follows:

> 2. A substantial and material change in circumstances exist such that it is in the best interest of the minor child, [Avery], to be in the care of Father, and Father shall be designated as the primary residential parent. The exchange of the minor child shall occur immediately.
>
> 3. Mother shall be awarded supervised parenting time. Counsel for the parties shall attempt to agree on an appropriate supervisor and schedule, but should they be unable, this Honorable Court shall determine the appropriate supervisor and schedule for Mother. It is the goal of this Court to award Mother standard parenting time after this Honorable Court is satisfied that Mother's long term therapy has appropriately addressed Mother's psychological functioning.
>
> 4. Mother shall immediately engage in intensive long term therapy to address those concerns of this Honorable Court regarding Mother's conduct and psychological functioning. The parties shall address this Court in ninety (90) days to assess Mother's compliance with this Court's requirement that Mother receive intensive therapy. Counsel for the parties shall contact the Clerk of Court to schedule said hearing.

5. Mother shall be enjoined from having anyone, including but not limited to, law enforcement, doctor, or therapist, evaluate the minor child without an Order of this Honorable Court.

6. Father shall select a therapist/counselor for Avery.

7. Father's ongoing child support obligation is terminated immediately. This Honorable Court shall address child support when Mother is able to exercise unsupervised parenting time.

On September 15, 2014, Mother filed a notice indicating that she was appealing the trial court's September 9 order. Nearly two months later, on November 4, 2014, the trial court entered an order setting a supervised parenting schedule for Mother. The trial court's November 4 order stated that "[t]his schedule shall be reviewed in ninety (90) days from the Court's ruling on September 4, 2014, to assess Mother's compliance with this Court's order requiring Mother to receive intensive therapy and Counsel for the parties shall contact the Clerk of Court to schedule said hearing." Father's petition for contempt was later "denied" by an order entered on January 7, 2015.

## Discussion

On appeal, Mother raises three specific issues in challenging the trial court's decision to modify custody. First, Mother contends the trial court erred in holding that there was a substantial and material change in circumstances requiring a modification of the parties' permanent parenting plan. Second, Mother asserts the trial court erred in holding that it was in Avery's best interest to change the designation of the primary residential parent. Lastly, Mother claims the trial court did not apply the correct best interest statute in determining the appropriate custodial parent for Avery. Because we conclude that the order appealed from is not a final order, we are without subject matter jurisdiction to review Mother's issues in this appeal.

As this Court previously stated:

The concept of subject matter jurisdiction involves a court's power to adjudicate a particular type of controversy. *See Meighan v. U.S. Sprint Communications Co.,* 924 S.W.2d 632, 639 (Tenn.1996); *Turpin v. Conner Bros. Excavating Co.,* 761 S.W.2d 296, 297 (Tenn.1988). Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act, *see Kane v. Kane,* 547 S.W.2d 559, 560 (Tenn.1977); *Brown v. Brown,* 198 Tenn. 600, 618–19, 281 S.W.2d 492, 501 (1955), and cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication. *See Hicks v. Hicks,* No. 01A01–9309–CH–00417, 1994 WL 108896, at *2 (Tenn.Ct.App.Mar.30, 1994)

(No Tenn.R.App.P. 11 application filed). A court's subject matter jurisdiction in a particular circumstance depends on the nature of the cause of action and the relief sought. *See Landers v. Jones,* 872 S.W.2d 674, 675 (Tenn.1994). It does not depend on the conduct or agreement of the parties, *see Shelby County v. City of Memphis,* 211 Tenn. 410, 413, 365 S.W.2d 291, 292 (1963); *James v. Kennedy,* 174 Tenn. 591, 595, 129 S.W.2d 215, 216 (1939), and thus the parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver. *See Caton v. Pic–Walsh Freight Co.,* 211 Tenn. 334, 338, 364 S.W.2d 931, 933 (1963); *Brown v. Brown,* 198 Tenn. at 618–19, 281 S.W.2d at 501.

*Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). Except as permitted under the Tennessee Rules of Appellate Procedure or under Rule 54.02 of the Tennessee Rules of Civil Procedure, this Court only has subject matter jurisdiction over final orders. *See Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 557-59 (Tenn. 1990); Tenn. R. App. P. 3(a). The present appeal is not an appeal by permission pursuant to the Tennessee Rules of Appellate Procedure, and the record does not reflect that the trial court's September 9, 2014, order was made final pursuant to the authority in Rule 54.02 of the Tennessee Rules of Civil Procedure. As such, the civil action appealed from must resolve all claims, rights, and liabilities of the parties in order for this Court to exercise jurisdiction. *See Ball v. McDowell*, 288 S.W.3d 833, 836-37 (Tenn. 2009) ("A final judgment . . . is one that resolves all of the parties' claims and leaves the court with nothing to adjudicate.").

From our review of the record transmitted to us, we have determined that there is an absence of a final judgment. First, we note that the trial court never entered a permanent parenting plan following its decision to modify the custodial arrangement. The trial court entered a supervised parenting schedule pursuant to its November 4, 2014, order, but the trial court's orders clearly contemplate that the supervised schedule was to be only temporary. In its September 9, 2014, order, the trial court stated, "It is the goal of this Court to award Mother standard parenting time after this Honorable Court is satisfied that Mother's long term therapy has appropriately addressed Mother's psychological functioning." In the same order, the trial court went on to state, "The parties shall address this Court in ninety (90) days to assess Mother's compliance with this Court's requirement that Mother receive intensive therapy. Counsel for the parties shall contact the Clerk of Court to schedule said hearing." Moreover, in its November 4, 2014, order, the trial court stated that Mother's supervised parenting schedule "shall be reviewed in ninety (90) days from the Court's ruling on September 4, 2014 . . . and Counsel for the parties shall contact the Clerk of Court to schedule said hearing."

Because the trial court's September 9 and November 4 orders contemplate that an additional hearing will be held concerning the parenting schedule, it is apparent from a clear reading of the orders that they were not final orders for purposes of appeal. Second,

5

we observe that the trial court's orders do not set child support for Avery. In its September 9, 2014, order, the trial court stated as follows: "Father's ongoing child support obligation is terminated immediately. This Honorable Court shall address child support when Mother is able to exercise unsupervised parenting time."[3]

The trial court's orders clearly reflect that not all matters in this case have been resolved. Because we lack subject matter jurisdiction due to the absence of a final judgment, we hereby dismiss Mother's appeal. Costs on appeal are assessed against Mother, M.K.B., and her surety, for which execution may issue if necessary. This matter is remanded to the trial court for the collection of costs, enforcement of the judgment, and any further proceedings as may be necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[3] We note that after announcing his oral ruling on September 4, 2014, the trial judge stated, "[W]hen the Court puts the parenting time in place then we will have the numbers to do the [child support] calculation."