FILED

07/18/2019

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2019 Session

## SAVE OUR FAIRGROUNDS ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE

**Appeal from the Chancery Court for Davidson County**
**No. 18-952-III      Ellen H. Lyle, Chancellor**

---

### No. M2019-00724-COA-R3-CV

---

Appellants filed a complaint for a declaratory judgment and injunctive relief against the Metropolitan Government of Nashville & Davidson County related to the city's decision to allow a soccer stadium to be built at the fairgrounds. The complaint alleged that the action violated several provisions of the city's charter intended to protect the fairgrounds for fair uses. The trial court granted summary judgment in favor of the city on the basis that the additional uses for the fairgrounds did not violate Metropolitan Charter section 11.602. Because the trial court's order fails to adjudicate Appellants' claims that the city's action violated additional charter provisions, we dismiss this appeal for lack of subject matter jurisdiction.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ANDY D. BENNETT, and RICHARD H. DINKINS, JJ., joined.

James D. R. Roberts, Jr., Nashville, Tennessee, for the appellants, Save Our Fairgrounds, Nashville Flea Market Vendors Association, Neil Chaffin, Shane Smiley, Duane Dominy, Rick Williams, James Tacker, George Gruhn, Tony Watson, Darhonda Day, Steven Dyer, Nathan McWilliams, Mathew Jackson, Tonya Jackson, Mildred Smith, and Allyson W. Henderson.

Jon Cooper, Lora Barkenbus Fox, and Catherine J. Pham, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County, Tennessee.

### OPINION

## BACKGROUND

This case involves a dispute as to whether Defendant/Appellee Metropolitan Government of Nashville and Davidson County ("Metro") violated its own charter in approving leases related to the construction of a soccer stadium and other amenities on land designated for use as the Tennessee State Fairgrounds or the Nashville fairgrounds ("the fairgrounds"). Several private acts and the Metropolitan Charter ("Metro Charter") govern the use of the fairgrounds for an annual State Fair. In particular, Metro Charter section 11.602(a) created a "metropolitan board of fair commissioners" ("Fair Board") to exercise all previously granted powers related to the annual fair and the fairgrounds.[1] In response to concerns that the fairgrounds were to be co-opted for other uses, in 2011, the Metro Charter was amended by ballot initiative to include the following language intended to preserve existing uses of the fairgrounds:

> All activities being conducted on the premises of the Tennessee State Fairgrounds as of December 31, 2010, including, but not limited to, the Tennessee State Fair, Expo Center Events, Flea Markets, and Auto Racing, shall be continued on the same site. No demolition of the premises shall be allowed to occur without approval by ordinance receiving 27 votes by the Metropolitan Council or amendment to the Metropolitan Charter.

Metro Charter § 11.602(d).

On November 8, 2017, the Metropolitan Council ("Metro Council") passed a resolution granting conditional approval for the construction of a major league soccer stadium on the fairgrounds property. Major League Soccer ("MLS") thereafter announced that Nashville had been awarded an MLS expansion club. The conditional approval required approval of a ground lease by the Fair Board and the Sports Authority and approval of an operating lease by the Sports Authority. The Sports Authority also was required to enter into a development agreement with the MLS team, a construction management agreement with the building contractor, and a construction administration agreement with the MLS team. The terms of the agreements have allegedly been substantially reached and approved by both the Fair Board and the Sports Authority. In connection with these agreements, Metro intended to add soccer and other uses to the fairgrounds. On or about August 16, 2018, the Fair Board declared 10 acres of

---

[1] Metro Charter section 11.602(a) provides that the Fair Board is to "[e]xercise all the powers and perform all the duties heretofore or hereafter imposed on the Board of Fair Commissioners of Davidson County, as established by chapter 490 of the Acts of Tennessee for 1909 and chapter 515 of the Private Acts of 1923 and amendments thereto." *See also* Private Act of 1923, ch. 515, § 2, 3 (establishing the Board of Fair Commissioners and giving this board power over the fair); Private Act of 1901, ch. 490, § 2 (entrusting the Board of Fair Trustees with the obligation to use and maintain the fairgrounds for the purposes of holding an annual state fair).

- 2 -

fairgrounds as surplus, which property is to be the subject of the ground lease.[2] Later, the Metro Council voted by 31 votes to demolish certain buildings on the fairgrounds, but the buildings would not be demolished until new buildings were ready for existing uses.

Plaintiffs/Appellants, representing the interests of the existing uses of the fairgrounds, filed a complaint against Metro in September 2018. The complaint contained four counts: a declaratory judgment action, a petition for a writ of mandamus, a request for injunctive relief, and a petition for a writ of certiorari. In general, the complaint alleged that the ground and operating leases violated Metro Charter section 11.602(d), which was enacted to protect the existing uses of the fairgrounds. The complaint was accompanied by a multitude of documents to support the allegations. After a two-day hearing in which Metro presented evidence that the existing uses of the fairgrounds would not be harmed by the additions, Appellants' request for a temporary injunction was denied. Specifically, the trial court orally ruled that Appellants' claim that parking would be drastically reduced was not supported by the evidence presented.

Metro thereafter filed a motion to dismiss on several grounds, arguing as follows: (1) Appellants lack standing as they have no legally cognizable injury; (2) Appellants' claims are speculative and unripe; (3) the complaint does not state a claim for mandamus; and (4) the complaint does not establish jurisdiction or state a claim for a writ of certiorari. Metro also argued that many of the claims were barred by res judicata and collateral estoppel, citing a prior case that was dismissed based on lack of ripeness and failure to state a claim.

On October 5, 2018, Appellants filed their First Amended Complaint.[3] The consequence of the First Amended Complaint was twofold. First, the amended complaint

---

[2] Metro Ordinance section 2.24.250 was amended on March 4, 2018, to include the following requirements that Appellants assert are applicable here:

> D. The director of public property administration is authorized to lease real property of the metropolitan government held by him or her as surplus or unused property in accordance with such rules and regulations as he or she may establish consistent with this code, other ordinances of the metropolitan government and the Metropolitan Charter, and upon approval by resolution of the Metropolitan Council.

> \* \* \*

> H. Beginning January 1, 2018, any property owned by the metropolitan government of Nashville and Davidson County that is to be leased for a term greater than fifty (50) years is required to be declared surplus pursuant to this section prior to the lease taking effect.

[3] Appellants sought leave of court to file the amended complaint. The trial court ruled that the amended complaint was permitted as a matter of right, but set a deadline for the filing of the amended complaint. *See* Tenn. R. Civ. P. 15.01 ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served[.]").

deleted the request for a writ of certiorari. Additionally, the amended complaint added more specific allegations that Metro's actions violated not only Metro Charter sections 11.602, but also Article II, sections 8 and 10 of the Metro Charter.[4] Copies of all applicable charter sections were attached to the amended complaint.

The trial court entered an order on the motion to dismiss on October 26, 2018. Therein, the trial court dismissed Appellants' petition for a writ of mandamus, but concluded that Appellants' claims for declaratory judgment and injunctive relief could survive. In particular, the trial court rejected Metro's argument that Appellants' lacked standing to pursue declaratory judgment, as the complaint alleged that Appellants would suffer an injury as a result of Metro's actions. The trial court likewise rejected Metro's arguments that the claims were not ripe, were speculative, or were barred by earlier litigation. The trial court also ruled that it was Metro's burden to show that "it is feasible for the New Uses to be added without substantially reducing or eliminating the Existing Uses in the face of the real and tangible conflicts with the Existing Uses alleged by [Appellants] in the Amended Complaint." Finally, the trial court directed the parties to address whether the State of Tennessee should be added as a party, given the enactment of Tennessee Code Annotated section 4-57-101, *et. seq.*[5]

On November 12, 2018, Metro filed an answer to the First Amended Complaint, denying the material allegations contained therein. The parties proceeded to prepare for trial. However, on December 5, 2018, the trial court entered an order holding the trial in abeyance due to the fact that "the parties have vastly different legal positions on the scope of the lawsuit[.]" As such, the trial court noted that Metro intended to file a motion for summary judgment as to "the scope of the lawsuit[,]" and Appellants needed to decide whether to join the state as a party. If Appellants chose to join the State, the trial court directed Appellants to communicate the decision to the State and the docket clerk. On December 13, 2018, the trial court entered an order stating that Appellants had properly notified the clerk of their intent to "bring the State [] into this lawsuit." As such,

---

[4] Article II, section 8 of the Charter provides, in relevant part, that "[the Fair] board shall have control of the disbursement of all funds collected by taxation, received from the State of Tennessee, or collected from gate receipts, concessions, or leases of the said fair property for educational or amusement purposes, for the operation, maintenance or improvement of the fair property." Article II, section 10 of the Charter provides:

[The Fair Board] shall use and maintain said property by holding thereon, at least once a year, for not less than six days, a fair or exposition for the benefit of the people of such counties, and they may lease for amusement purposes said property at such times and in such ways as not to interfere with the operation of said fair, the proceeds received from said leases to be used in the maintenance of said fair, at which shall be exhibited, as far as possible, the resources of said county . . . .

[5] In particular, Tennessee Code Annotated section 4-57-102 provides that "[i]t is the intent of the general assembly that the commission created herein shall be the sole body in Tennessee charged with administering a state fair and exposition."

the trial court ruled that "the filings by [Appellants] to bring the State into this lawsuit shall be filed by January 3, 2019."

Meanwhile, on December 12, 2018, Metro filed a motion for summary judgment. In relevant part, the motion stated as follows:

> [Metro] respectfully requests that this Court grant summary judgment in its favor, declare the following, and deny any injunctive relief:
>
> • Adding uses to the Fairgrounds, while also building brand new, modern facilities for the existing activities, does not violate the [Metro's] duty under Metro[] Charter § 11.602 to continue existing activities.
> • The agreements to allow additional uses (soccer stadium, mixed use, and the park) were entered into legally and the terms of those agreements meet the rational basis test for legislation.
> • [Metro] no longer has the responsibility or duty to host the State Fair. Its duty is now to host a divisional fair.
> • [Appellants] are not entitled to advisory declarations.

The memorandum accompanying the motion confirmed that the central issue of the motion was Metro's compliance with Metro Charter section 11.602(d). Metro also filed a statement of undisputed material facts.[6]

On January 3, 2019, Appellants filed a Second Amended Complaint adding the State as a plaintiff. The next day, Metro filed a motion to dismiss the State as an involuntary plaintiff. On January 11, 2019, Appellants filed a motion for leave to add the Tennessee State Fair Association as a necessary party. On January 14, 2019, Appellants filed a response to Metro's motion for summary judgment, statement of undisputed facts, and motion to dismiss. Appellants later filed a memorandum in support of their response to the summary judgment motion. First, Appellants asserted that the motion was not ripe because discovery had not been completed. Appellants also noted that Metro's motion dealt with "some, but not all, of the problems with Metro's actions at the Fairgrounds. To the extent the actions by Metro detailed in the [operative complaint] and are not addressed by its motion, those claims should naturally survive." Also on January 14, 2019, the State filed a motion to dismiss the Second Amended Complaint, arguing that Appellants were barred from joining the State as a party due the doctrine of sovereign immunity. The State further noted that it did not claim an interest in the lawsuit.

On January 18, 2019, Appellants filed two affidavits in support of their claim that Metro's actions would harm the existing uses of the fairgrounds. Metro thereafter

---

[6] The statement contained only four allegedly undisputed facts.

responded in opposition to Appellants' request to add the Tennessee State Fair Association as a party.

A hearing on the motion for summary judgment was held on January 18, 2019. During the hearing, counsel for Appellants expressed some confusion as to the purpose of the motion for summary judgment, indicating his understanding that the motion was intended to narrow the issues for trial, rather than seek dismissal of a "fact-based case through [summary judgment]." Counsel again noted that full discovery had yet to take place.[7]

On January 24, 2019, the trial court entered a detailed order granting summary judgment to Metro and dismissing "this case as a matter of law." In reaching this result, the trial court noted that the lawsuit "concerns the meaning of section 11.602(d) of the Metro Charter." The trial court ruled that Metro had met its burden to show compliance with section 11.602(d), but that Appellants failed to meet their burden to show disputed material facts to defeat summary judgment. The trial court also rejected several arguments by Appellants as to why summary judgment was not appropriate, including issues regarding the term sheet, the ground lease, the surplusing of property, and "Metro's State Fair Duty." None of these arguments, the trial court concluded, defeated Metro's summary judgment motion. Finally, the trial court ruled that based on its decision "it necessarily follows" that Appellant's motion for leave to add the Tennessee State Fair Association as a party was denied, while the motions to dismiss the allegations against the State were granted.

On February 25, 2019, Appellants filed a motion to reconsider the trial court's grant of summary judgment, taking issue with several of the conclusions made by the trial court. Appellants filed an amended motion to reconsider on March 1, 2019. In the amended motion, Appellants conceded that the trial court's "ruling presents a well thought and reasoned examination of the pertinent laws relevant to this case," but again argued that certain conclusions made by the trial court were erroneous.

A hearing on the motion to reconsider was held on March 21, 2019. During the hearing, Appellants attempted to introduce video clips regarding the legislative history of Tennessee Code Annotated section 4-57-101, *et. seq.* Metro later filed a written objection to the consideration of this evidence, noting that the evidence had not been produced in response to the motion for summary judgment, and, in any event, the evidence was not relevant and did not change the trial court's analysis. The trial court entered an order denying Appellants' motion to reconsider on March 26, 2019. The trial court, however, denied in part and granted in part Metro's objection to the video clips, ruling that they were authentic and admissible, but not material to the question of summary judgment.

---

[7] Appellants do not point to a place in the record where they filed an affidavit in response to the motion for summary judgment specifically seeking additional discovery.

Appellants thereafter appealed to this Court. On May 8, 2019, this Court granted Metro's motion to expedite this appeal.

**Analysis**

Appellants raise several issues in this Court concerning the propriety of the trial court's ruling. In addition, Appellants contend that although they initiated this appeal, this Court lacks subject matter jurisdiction because the trial court's order does not constitute a final order. Rule 3 of the Tennessee Rules of Appellate Procedure provides that if multiple parties or multiple claims are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not final or appealable. Except where otherwise provided, this Court only has subject matter jurisdiction over final orders. *See Bayberry Assoc. v. Jones*, 783 S.W.2d 553 (Tenn. 1990). *But see* Tenn. R. App. 9 (governing discretionary interlocutory appeals for which no final judgment is necessary); Tenn. R. App. 10 (discussing discretionary extraordinary appeals for which no final judgment is necessary).

Here, Appellants contend that the trial court's judgment does not constitute a final order because it did not adjudicate its claims that either Metro Charter section 11.602(a) or Article II, sections 8 and 10 of the Metro Charter were also violated by Metro's actions with regard to the fairgrounds. A thorough review of the trial court's orders granting summary judgment and denying Appellants' motion to reconsider indeed reveals that neither Metro Charter section 11.602(a) nor Article II, sections 8 and 10 were specifically addressed by the trial court.[8] Instead, the trial court limited its analysis of the Metro Charter to section 11.602(d).

Metro does not dispute that the trial court's orders fail to analyze or apply these charter sections. Metro argues, however, that this failure does not render the trial court's judgment non-final, as these claims were either waived in the trial court or abandoned on appeal. Metro bears the burden of showing that these claims were waived or abandoned. *See Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009) (holding that the party invoking waiver has the burden of demonstrating that the issue was "in fact" waived); *see also Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 722 (Tenn. Ct. App. 1998) ("The law will not presume a waiver, and the party claiming the waiver has the burden of proving it by a preponderance of the evidence."). As such, we will consider first whether these claims were properly raised in the trial court.

In this appeal, Metro claims that Appellants "did not raise the arguments that Article II, sections 8 and 10 and [s]ection 11.602(a) limit the Fair Board's leasing powers at the trial level. The only Charter provision they asked to be interpreted was Charter §

---

[8] The trial court does mention the Private Acts referenced in section 11.602(a) in its discussion of whether Metro retains a duty over the State Fair due to the enactment of Tennessee Code Annotated section 4-7-101 *et seq.*

11.602(d), allowing existing uses to continue." To the extent that this statement is read to argue that these claims were raised for the first time on appeal, Metro's own brief belies this contention, as Metro further argues that these sections were first introduced in Appellants' Second Amended Complaint. Metro argues, however, that this complaint should not be considered because Appellants were not granted leave of court to file the Second Amended Complaint. Respectfully, we disagree.

Here, Article II, sections 8 and 10 were expressly and specifically raised in Appellants' First Amended Complaint on multiple occasions. For example, one allegation in the First Amended Complaint specifically states that "[t]he destruction of necessary parking for no compensation to the Fair Board interferes with the operation of said fair in violation of the Metro Charter's [Article] II, § 10 & 8." Likewise, Appellants' First Amended Complaint specifically references the language contained in Metro Charter section 11.602(a). There is no dispute that this complaint was properly filed pursuant to Rule 15.01 of the Tennessee Rules of Civil Procedure.[9] Moreover, the trial court expressly acknowledged the claim regarding section 10, as it noted in its order on the motion to dismiss that Appellants' complaint includes "allegations . . . that Metro's actions 'negatively affects and violates the protected uses secured by the 2011 Charter Amendment (Metro Code 11.602 / Metro Charter's Art. II § 10).'" As such, to the extent that Metro contends that these claims were not raised "at the trial level," we cannot agree.

Metro next argues that these claims were not raised in response to summary judgment except in a bare and conclusory fashion. We begin with Metro Charter section 11.602(a). Metro specifically referenced section 11.602(a) in its motion for summary judgment. Appellants, however, did not address this subsection in any fashion in their response to Metro's motion. As previously discussed, Metro Charter section 11.602(a) provides that the Fair Board will continue in its duty to operate the fair pursuant to previous Private Acts. Although Appellants' brief to this Court certainly states that the trial court was required to adjudicate its claim under section 11.602(a), the bulk of its argument focuses nearly exclusively on the alleged violations of Article II, sections 8 and 10. As such, Appellants offer little elucidation as to why section 11.602(a) provides a separate claim or legal theory that the trial court was required to adjudicate. Generally, when a party develops only a skeletal argument in support of its contentions, the argument is waived. *See Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). In the absence of authority to the contrary, it appears to this Court that Metro's duties under section 11.602(a) are part and parcel of their obligations under Metro Charter 11.602(d) and Article II, sections 8 and 10. Given Appellants' failure to include any specific argument on this subsection in their response

---

[9] We therefore need not address the propriety of the Second Amended Complaint, which contains similar allegations concerning Article II, section 8 and 10.

to Metro's motion for summary judgment and their failure to sufficiently brief this issue, we conclude that the trial court's failure to separately analyze Metro's compliance with Metro Charter section 11.602(a) is not a bar to finality in this case.

The same is not true, however, of Appellants' claims under Article II, sections 8 and 10. Here, despite that fact that Appellants' First Amended Complaint raised Article II, sections 8 and 10, nothing in Metro's motion for summary judgment addresses these charter sections or Appellants' argument that they were violated. Instead, Metro's motion concerns only compliance with Charter section 11.602, whether the agreements in dispute meet the rational basis test for legislation, and whether Metro maintains the duty to hold the State Fair. While compliance with Metro Charter section 11.602(d) is certainly related to compliance with Article II, sections 8 and 10, compliance with section 11.602(d) is simply not dispositive of whether Metro's actions also complied with any applicable duties under Article II, sections 8 and 10. Moreover, Metro's motion was not clear that it was seeking total dismissal of all allegations contained in the First Amended Complaint. Indeed, this fact is illustrated at the hearing on the motion for summary judgment when counsel for Appellants expressed some confusion as to the purpose of the summary judgment, which counsel for Appellants' was under the impression was meant only to "narrow the[] issues."

The burden shifting framework of Tennessee's summary judgment rule is well-settled. Only once the movant meets their burden of production does the burden shift to the non-moving party to show that summary judgment is inappropriate, either as a matter of law or due to disputed material facts. *See Coleman v. S. Tennessee Oil, Inc.*, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at *3 (Tenn. Ct. App. July 5, 2012) ("However, we note that the burden of production only shifts to [the plaintiff], as the nonmoving party, if [the defendant] provides a 'properly supported motion' for summary judgment."). Here, Metro's summary judgment motion made no reference to Article II, sections 8 and 10; as such, it did not shift the burden to Appellants to defeat summary judgment as to those specific claims. Appellants therefore were under no obligation to raise Article II, sections 8 and 10 in their response to the summary judgment motion. They did, however, appropriately note that the summary judgment motion would not adjudicate all issues when they responded to summary judgment.

Because Appellants' were not required to put forth an argument as to Article II, sections 8 and 10 in their response to Metro's motion for summary judgment, the failure to adjudicate these claims prevents the trial court's order from being final. In its brief, however, Metro appears to argue that Appellants abandoned these claims on appeal. In support, they note several statements in which Appellants allude to the finality and completeness of the trial court's order. For example, in Appellants' motion to reconsider the trial court's grant of summary judgment, Appellants did not raise the fact that the trial court failed to adjudicate the claims under Article II, sections 8 and 10, instead indicating that the trial court's order was a "well thought and reasoned examination of the pertinent

laws relevant to this case." Metro cites no law, however, for the proposition that a litigant must raise the question of finality to the trial court in a motion to reconsider. Indeed, such a rule would clearly conflict with the well-settled proposition that subject matter jurisdiction, including this Court's jurisdiction over final judgments, cannot be waived by the parties. *See Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) ("[T]he parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver."). Moreover, because Appellants' motion is not addressed specifically to either Rule 54.02 of the Tennessee Rules of Civil Procedure, concerning revision of non-final grants of summary judgment, or Rule 59.04, concerning revision of judgments that are final and appealable as of right, we cannot discern whether this motion evinces a decision to abandon all unadjudicated claims.

Later, Appellants filed a "Docketing Statement for Civil Appeals" with this Court in which Appellants specifically affirmed that the trial court's order was final. Often litigants appeal non-final orders on the belief that their appeals are indeed final. Upon further reflection, or based on this Court's review of the record, it is revealed that certain claims remained unadjudicated. Metro cites no law, nor has our research revealed any, in which an Appellants' attempt to appeal a non-final order under Rule 3 of the Tennessee Rules of Appellate Procedure results in a waiver of the claims left pending in the trial court, even when this issue is completely ignored by the parties. *See, e.g., Hensley v. Hensley*, No. E2017-00354-COA-R3-CV, 2017 WL 5485320, at *7 (Tenn. Ct. App. Nov. 15, 2017) (dismissing the appeal, sua sponte, upon determining that the trial court's judgment was not final); *Van Hooser v. Van Hooser*, No. W2009-01191-COA-R3-CV, 2010 WL 597451, at *3 (Tenn. Ct. App. Feb. 22, 2010) (same); *In re Estate of Boykin*, 295 S.W.3d 632, 635–36 (Tenn. Ct. App. 2008) (same).

A similar set of facts was presented in *Paul v. Watson*, No. W2011-00687-COA-R3-CV, 2012 WL 344705 (Tenn. Ct. App. Feb. 2, 2012). In *Paul*, the trial court entered judgment in favor of the defendant on the breach of contract claim. The plaintiff appealed under Rule 3. *Id.* at *2. At oral argument, counsel for plaintiff insisted that the order of the trial court was final. *Id.* at *4. When asked if plaintiff had abandoned claims for conversion, negligent misrepresentation, and intentional misrepresentation, plaintiff's counsel stated that plaintiff had not. *Id.* Indeed, plaintiff's brief raised the trial court's failure to make specific findings as to these claims as an issue on appeal. *Id.* Despite the plaintiff's insistence that the trial court's judgment was final, we dismissed the appeal as resulting from a non-final judgment. *Id.* at *4–*5. Thus, the fact that plaintiff at some point asserted that the order constituted a final judgment did not prevent this Court from exercising its duty to review the record to determine whether the judgment appealed from was in fact final. *See id.* at *3 (citing Tenn. R. App. P. 13(b) (stating that while review generally only extends to the issues presented, the court must "also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review")).

- 10 -

The same is generally true in this case. Although we agree with Metro that Appellants could have done more to bring the lack of finality to the trial court's attention, their failure to do so cannot constitute a waiver of this issue. *See id.*; *see also* ***Dishmon***, 15 S.W.3d at 480. Moreover, we cannot conclude that Metro met its burden to show that Appellants abandoned their claims under Article II, sections 8 and 10. Because the trial court's order does not adjudicate the claims under Article II, sections 8 and 10, the trial court has not entered a final judgment appealable under Rule 3.

"'The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated.'" ***Johnson v. Metro. Gov't for Nashville Davidson Cty., Tenn.***, 54 S.W.3d 772, 774 (Tenn. Ct. App. 2001) (quoting ***Dishmon***, 15 S.W.3d at 480 (citation omitted)).[10] Given that the trial court's order is not final, we must dismiss this appeal without addressing any of the substantive arguments raised by the parties.[11]

## CONCLUSION

This appeal is dismissed without prejudice, and this cause is remanded to the Davidson County Chancery Court for further proceedings. Costs are taxed one-half to Appellants, and one-half to Appellee, Metropolitan Government of Nashville and Davidson County, for which execution may issue if necessary. In the event that either party seeks an appeal from the trial court's final judgment, upon motion of the parties or in this Court's discretion, the record in the new appeal may be consolidated with the record in this case.

_____

J. STEVEN STAFFORD, JUDGE

---

[10] Although it is true that this Court may suspend the finality requirement for good cause, see ***Bayberry Assocs. v. Jones***, 783 S.W.2d 553, 559 (Tenn. 1990), Metro has not asked for that relief in this Court. Moreover, Metro declined to address in any fashion Appellants' allegations that Article II, sections 8 and 10 were violated by their actions in this case. As such, we cannot conclude that this is an appropriate case in which to exercise our discretion to consider this appeal notwithstanding the lack of a final judgment.

[11] Even if we were to conclude that the trial court's order was final, a significant issue would still exist as to the trial court's failure to state its legal reasoning supporting summary judgment as to these charter provisions. *See* Tenn. R. Civ. P. 56.04 ("The trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling."). Where the trial court fails to comply with Rule 56.04, the Tennessee Supreme Court has held that the proper remedy is to vacate the trial court's judgment and remand for a more complete order. *See generally* ***Smith v. UHS of Lakeside, Inc.***, 439 S.W.3d 303 (Tenn. 2014). As such, regardless of the lack of finality, we still would not reach the merits of this appeal.