IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 12, 2024 Session

**BRITTNI (GRAY) HAGGARD v. JOE MICHAEL CARROLL**

**Appeal from the General Sessions Court for McNairy County**
**No. 10-DV-125      Angela R. Scott, Judge**
_____

**No. W2023-01521-COA-R3-CV**
_____

Appellee filed a petition to modify parenting time and child support, and Appellant filed a countermotion and a Tennessee Supreme Court Rule 10B motion for recusal of the trial judge. The trial court did not enter an order on Appellant's motion for recusal, and there was no order transferring the case to another judge by interchange. The new judge made substantive rulings, and Appellant filed a motion to alter or amend asserting that the judge lacked subject-matter jurisdiction over the case because the requirements of Tennessee Supreme Court Rules 11 and 10B were not met. We agree. Vacated and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Vacated and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

James Yeiser Ross, Sr., Waynesboro, Tennessee, for the appellant, Brittni Gray Haggard.

Cory Shaun Hancock, Jackson, Tennessee, for the appellee, Joe Michael Carroll.

**OPINION**

**I. Background**

In July 2016, Appellant Brittini (Gray) Haggard ("Mother") and Appellee Joe Michael Carroll ("Father") were divorced by the General Sessions Court of McNairy County ("trial court"). The decree of divorce and permanent parenting plan for the parties' two minor children were entered by General Sessions Judge Van McMahan. The parties' agreed parenting plan required Father to pay child support. In September 2020, Father

filed a motion to modify child support. Mother did not respond, and, in June 2021, Father moved for a default judgment. Following a hearing on June 23, 2021, the trial court entered a default judgment reducing Father's child support obligation effective September 2020.

In July 2022, Father filed a petition to modify the parenting plan to designate him primary residential parent and to further reduce his child support obligation. He filed an amended petition in August 2022. In September 2022, Mother answered Father's petition and filed a counterpetition seeking more parenting time and an increase in Father's child support obligation.

In February 2023, Father's attorney informed Mother's attorney that he was "working on a couple [of] unrelated cases with Judge McMahan[]" but did not think Judge McMahan would be biased in his favor. He further stated: "I'd rather give you a heads up now, so that we can ask for a different Judge now instead of on the hearing date." Mother's counsel responded and suggested a conference call with Judge McMahan to request "a different judge to hear this case by interchange in accordance with Rule 10B[.]" Mother's counsel further stated that he would file a motion to recuse if a telephone conference call was not "agreeable[.]" On March 8, 2023, Mother filed a motion pursuant to Tennessee Supreme Court Rules 10B and 11 asking Judge McMahan to recuse himself and for designation of a judge to sit by interchange. In her motion, Mother asserted that she had "recently learned" that Father's legal counsel had clerked or interned for the trial judge.

On March 31, 2023, while Mother's motion to recuse was pending, the State of Tennessee moved the trial court to temporarily modify Father's child support obligation. The motion noticed a hearing date of April 17, 2023. Following the hearing, the trial court found that Father had overpaid his child support obligation after it was modified in the June 2021 default judgment. By order signed by the judge on April 17, 2023, but entered on June 2, 2023, the trial court granted the State's motion and temporarily reduced Father's child support obligation to $96.43 per month until May 1, 2027. On June 22, 2023, Mother filed a motion to vacate and set aside both the June 2023 order and the June 2021 default judgment. The trial court did not rule on Mother's motion to recuse and did not enter an order transferring the case to another judge by interchange. Nonetheless, on August 4, 2023, the matter was heard by Judge Angela R. Scott, the Chester County General Sessions Judge. On August 6, 2023, Judge Scott entered an order modifying the parenting plan and designating Father as primary residential parent. The order reserved ruling on issues of child support, child support arrears, and Mother's motion to set aside and vacate the default judgment.

On August 31, Mother filed a motion to vacate and set aside or alter and amend the August 7 order. She also moved for a new trial and the designation of a new judge. In her motion, Mother argued, in relevant part, that: (1) Judge McMahan neither granted nor denied her motion to recuse; (2) no order was entered transferring the matter to Judge Scott; and (3) Judge Scott was not properly designated to preside by interchange under either

Tennessee Supreme Court Rules 10B or 11.

On September 1, 2023, Father filed a motion to terminate his child support obligation and to set Mother's child support. On September 14, 2023, Father filed a motion for reimbursement for overpayment of child support and also moved to dismiss Mother's motions to vacate and to set aside the default judgment.

Following a hearing on September 14, Judge Scott entered an order on October 4, 2023, wherein she denied Mother's motion to vacate and set aside, alter and amend, or grant a new trial and designate a different judge. In her order, Judge Scott found that she was properly designated to sit by interchange for Judge McMahan under a March 9, 2023 standing order entered by Tennessee Supreme Court Chief Justice Roger Page. Judge Scott also determined that counsel for both parties agreed that she would hear the matter and found that Mother did not object prior to the August 2023 order. Judge Scott also denied Mother's motion to vacate and set aside the 2021 default judgment and set Mother's child support obligation at $154.00 per month effective October 1, 2023.[1] Mother filed a timely notice of appeal.

## II. Issues

Mother raises six issues for review. We restate the dispositive issue as: whether the trial court lacked subject-matter jurisdiction because Judge Scott was not properly designated to preside by interchange under Tennessee Supreme Court Rule 11 or 10B.

## III. Standard of Review

This appeal requires us to determine whether the trial court acted without subject-matter jurisdiction by construing the requirements of Tennessee Supreme Court Rules 10B and 11. Issues involving the interpretation of court rules and subject-matter jurisdiction present questions of law, which we review de novo with no presumption of correctness. *Flade v. City of Shelbyville*, 699 S.W.3d 272, 281 (Tenn. 2024) (citations omitted); *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712-13 (Tenn. 2012) (citation omitted).

## IV. Analysis

In her brief, Mother submits that: (1) Judge McMahan did not hear her motion to recuse or enter an order of recusal as required by Rule 10B; (2) the parties did not agree that Judge Scott would preside by interchange; and (3) Judge Scott was not properly designated to sit by interchange under Rules 11 and 10B. Mother also asserts that the trial

---

[1] On December 13, 2023, Judge Scott entered an order terminating Father's child support obligation.

court lacked subject-matter jurisdiction because, as the General Session Judge for Chester County, Judge Scott is not vested with divorce jurisdiction under Tennessee Code Annotated sections 16-15-501 and 16-15-5004. From our review, the record does not contain an agreed order designating Judge Scott to preside over the case. Accordingly, we turn first to Mother's argument that the trial court lacked subject-matter jurisdiction to adjudicate this case.

## A. Subject-Matter Jurisdiction

Mother argues that, because the General Sessions Court for Chester County does not have jurisdiction to adjudicate divorce cases, Judge Scott did not have the authority to preside over the case by interchange. Therefore, she asserts that the trial court acted without subject-matter jurisdiction.

Subject-matter jurisdiction is conferred by statute and the Tennessee Constitution and "'refers to *a court's* lawful authority to adjudicate a controversy[.]'" *In re Conservatorship of Malone*, 691 S.W.3d 365, 370 (Tenn. 2024) (emphasis added) (quoting *Cox v. Lucas*, 576 S.W.3d 356, 359 (Tenn. 2019)). "Courts 'cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication.'" *Hirt v. Metro. Bd. of Zoning Appeals of Metro. Gov't of Nashville*, 542 S.W.3d 524, 527 (Tenn. Ct. App. 2016) (quoting *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999)). Subject-matter jurisdiction cannot be waived, and we must vacate the trial court's judgment and dismiss the appeal if we determine that the trial court lacked subject-matter jurisdiction.[2] *Id.* (quotation omitted).

Mother does not dispute that the General Sessions Court for McNairy County has jurisdiction to adjudicate divorce cases and post-divorce motions. Rather, she argues that

---

[2] In 2000, the Tennessee General Assembly enacted a general transfer statute that provides:

> Notwithstanding any other provision of law or rule of court to the contrary, when an original civil action, an appeal from the judgment of a court of general sessions, or a petition for review of a final decision in a contested case under the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, is filed in a state or county court of record or a general sessions court and such court determines that it lacks jurisdiction, the court shall, if it is in the interest of justice, transfer the action or appeal to any other such court in which the action or appeal could have been brought at the time it was originally filed. Upon such a transfer, the action or appeal shall proceed as if it had been originally filed in the court to which it is transferred on the date upon which it was actually filed in the court from which it was transferred.

Tenn. Code Ann. § 16-1-116. Accordingly, if we determine a trial court acted without subject-matter jurisdiction, we generally will dismiss the appeal and remand the matter to the trial court with instructions to transfer it to the appropriate court. *See In re Estate of Ellis*, No. W2019-02121-COA-R3-CV, 2020 WL 7334392, at *8-9 (Tenn. Ct. App. Dec. 14, 2020).

the Chester County General Sessions Court does not have the same jurisdiction, thus Mother contends that Judge Scott did not have jurisdiction to preside over the case. The designation of a judge to sit by interchange in a trial court that possesses subject-matter jurisdiction is distinct from the improper transfer of a case to a court that lacks subject-matter jurisdiction. *In re Estate of Ellis*, No. W2019-02121-COA-R3-CV, 2020 WL 7334392, at *6-8 (Tenn. Ct. App. Dec. 14, 2020). A judge sitting by interchange "acquire[s] the powers of the judge 'in whose place the judge or chancellor is acting.'" *Id.* at *6 (quoting Tenn. Code Ann. § 17-2-206). Therefore, although "our interchange framework does not grant a *court* that otherwise lacks subject-matter jurisdiction the power to adjudicate the case[,] it . . . authorizes judges from other courts to sit by interchange in a court with subject-matter jurisdiction when the original judge cannot preside over the matter for whatever reason." *Id.* at *7 (emphasis added). Even assuming that the trial court did not follow the correct procedure in designating Judge Scott to sit by interchange, as discussed below, that procedural deficiency, standing alone, would not necessarily deprive the court of subject-matter jurisdiction. *See* *State v. Brown*, No. M2022-00729-CCA-R3-CD, 2023 WL 4573910, at *8 (Tenn. Ct. Crim. App. July 18, 2023) *perm. app. denied* (Tenn. Apr. 8, 2024). Subject-matter jurisdiction relates to a particular court's authority to adjudicate a matter, not that of an individual judge sitting by interchange. *Estate of Ellis*, 2020 WL 7334392, at *6-7. As such, we turn to the question of whether Judge Scott was properly designated to preside over this case by interchange under the Tennessee Supreme Court Rules.

## B. Tennessee Supreme Court Rule 11

Rule 11 provides a procedural mechanism for the designation of a substitute judge to preside by interchange in accordance with applicable provisions of the Tennessee Code. The Rule provides, in relevant part:

> c. *Substitute Judges.* Where a judge of a trial court of record fails to attend or is unable to hold court, as provided in Tenn. Code Ann. § 17-2-118, the following procedure shall be followed, in the sequence designated, for the selection of a substitute judge.
>
> (1) The judge shall seek interchange in accordance with Tenn. Code Ann. § 17-2-202;
>
> (2) The judge shall apply to the presiding judge or, if the applying judge is the presiding judge, the presiding judge pro tempore of the judicial district to effect an interchange with a judge of that judicial district in accordance with Tenn. Code Ann. § 16-2-509(c);
>
> (3) The presiding judge or the presiding judge pro tempore of the judicial district shall effect an interchange with a judge from another judicial district

- 5 -

in accordance with Tenn. Code Ann. § 16-2-509(d);

(4) The presiding judge or the presiding judge pro tempore shall request from the director of the Administrative Office of the Courts the designation of a judge by the Chief Justice, in accordance with Tenn. Sup. Ct. R. 10B, § 1.04, Tenn. Code Ann. §§ 16-3-502(3)(A) and 17-2-110. The presiding judge or presiding judge pro tempore shall use the designation request form appended at the end of Tenn. Sup. Ct. R. 10B.

Tenn. R. Sup. Ct. 11, § VII(c)(1)-(4).

It is undisputed that, on March 9, 2023, Chief Justice Page entered a standing order designating judges to sit by interchange in the McNairy County General Sessions Court. That order states:

If the Honorable Van D. McMahan, Judge of the General Sessions Court of McNairy County, Tennessee, is unavailable or recuses himself for any reason on any case, then, in the interest of the efficient and orderly administration of justice, the Chief Justice, exercising his statutory and inherent powers pursuant to the provisions of Title 17 and Section 16-15-209 of Tennessee Code Annotated, and Rule 11 of the Rules of the Supreme Court, hereby designates and assigns the following current judges to exercise such jurisdiction, subject to the availability and consent of such judge: Honorable Daniel L. Smith, Hardin County General Sessions Court; Honorable W. Boyette Denton, Hardeman County General Sessions Court; Honorable Angela Scott, Chester County General Sessions Court.

This order shall remain in effect through March 9, 2024.

Mother argues that she neither agreed nor consented to the designation of any of the three judges named in Chief Justice Page's order and asserts that

[the] Trial Court was not properly designated to preside by interchange in accordance with Rule 10B of the Tennessee Supreme Court Rules and Tenn. Sup. Ct. R. 11, Section VII©(4), using the designation request form.

Mother submits that because the trial court did not adhere to the requirements of Rule 11, and because it did not use the request form appended to Rule 10B, the Chief Justice's standing order was procedurally ineffectual absent her consent to the designation of Judge Scott.  Based on the alleged procedural defect, Mother argues that "[t]he Trial Court did not have the statutory authority to hear a divorce action or post-divorce proceeding and [Mother] submits the Orders of the Trial Court should be reversed or vacated."

- 6 -

Mother's argument regarding procedural defects is unavailing. First, Rule 10, which governs motions to recuse, permits the Chief Justice to grant permission to "skip the sequential steps[.]" Tenn. R. Sup. Ct. 10B, § 1.04.  Chief Justice Page implicitly granted such permission in his March 2023 order.  Second, the "request for designation of judge" form appended to Rule 10B provides a mechanism to request an order from the Chief Justice. Thus, Chief Justice Page's order accomplished the purpose of the designation form. Third, we have held that mere procedural errors in orders of appointment are not necessarily fatal when the designated judge acts under the color of law and in good faith. *See **State ex rel. Williams v. Woods***, 530 S.W.3d 129, 138 (Tenn. Ct. App. 2017) (citations omitted); ***Estate of Ellis***, 2020 WL 7334392, at *6.  Accordingly, a procedural error in the interchange-designation procedures, without more, does not negate the judge's authority to adjudicate the case nor does it impact subject-matter jurisdiction.  ***Id.***

## C. Rule 10B

We turn to Appellant's argument regarding the trial court's failure to comply with Rule 10B.  Rule 10B provides that, "[u]pon the filing of a motion [to recuse] pursuant to section 1.01, the judge shall act promptly by written order and either grant or deny the motion."  Tenn. R. Sup. Ct. 10B, §1.03.  It also prohibits the trial judge from taking further action in the case while the motion is pending "except for good cause stated in the order in which such action is taken."  Tenn. R. Sup. Ct. 10B, § 1.02; *see also **Matter of Conservatorship of Tapp***, No. W2021-00718-COA-R3-CV, 2023 WL 1957540, at *8 (Tenn. Ct. App. Feb. 13, 2023) (citations omitted).  Rule 10B also "specifically prohibits trial judges who recuse from picking their successors."  ***Estate of Ellis***, 2020 WL 7334392, at *5 (citing Tenn. R. Sup. Ct. 10B, §1.04).

As noted above, Judge McMahan did not enter an order granting or denying Mother's motion to recuse, nor did he enter an order transferring the case to Judge Scott to preside by interchange.  Further, Judge McMahan adjudicated the State's March 31, 2023 motion to modify Father's child support obligation while Mother's motion to recuse was pending.  Additionally, Mother argues that the trial court's failure to: (1) follow the procedural requirements of Rule 10B; (2) enter an order on her motion to recuse; or (3) enter an order transferring the matter, there is nothing to demonstrate that Judge McMahan did not specifically choose Judge Scott to preside by interchange.  She asserts that, because the requirements of Rule 10B were not met, the trial court acted without jurisdiction.

In ***Estate of Ellis***, we observed that the courts have not determined whether the participation of a judge in choosing his or her successor after granting a motion to recuse impacts subject-matter jurisdiction, ***Estate of Ellis***, 2020 WL 7334392, at *6, and it does not appear that we have considered the question since.  In ***Estate of Ellis***, we observed that a transfer order signed only by the transferring judge is insufficient to satisfy section 1.04 of Rule 10B, which prohibits trial judges who recuse themselves, from choosing their successors.  ***Id.*** at *6.  However, we "hesitate[d] to hold that this violation of Rule 10B,

standing alone, deprives the . . . court of subject-matter jurisdiction[]" and observed that the parties did not "dispute that the Presiding Judge was in fact involved in the proceedings following the recusal of [the trial judge]." *Id.* Similarly, in this case, Chief Justice Page's order demonstrates that he was involved in choosing the judges who were authorized to sit by interchange in the event of Judge McMahan's recusal.

We have "'repeatedly held that the requirements of Rule 10B must be strictly followed.'" *Valderrama v. Hurvitz*, No. E2024-00496-COA-T10B-CV, 2024 WL 1654496, at *3 (Tenn. Ct. App. Apr. 17, 2024) (quoting *StoneyBrooke Invs., LLC v. Mccurry*, No. E2024-00253-COA-T10B-CV, 2024 WL 837942, at *2 (Tenn. Ct. App. Feb. 28, 2024) (citing *Johnston v. Johnston*, No. E2015-00213-COA-T10B-CV, 2015 WL 739606, at *2 (Tenn. Ct. App. Feb. 20, 2015) and *Elliott v. Elliott*, No. E2012-02448-COA-10B-CV, 2012 WL 5990268, at *3 (Tenn. Ct. App. Nov. 30, 2012)). These requirements are mandatory. *Matter of Conservatorship of Tapp*, 2023 WL 1957540, at *11 (quotation omitted).

Furthermore, appellate courts have repeatedly emphasized that trial courts speak only through their written orders. *See, e.g., Williams v. City of Burns*, 465 S.W.3d 96, 118 (Tenn. 2015); *In re Conservatorship of Hudson*, 578 S.W.3d 896, 917 (Tenn. Ct. App. 2018). In *Conservatorship of Tapp*, we considered whether the trial court's oral denial of a motion to recuse was sufficient to satisfy Rule 10B and determined that it was not. 2023 WL 1957540, at *8. Accordingly, we vacated orders entered by the trial court after the motion to recuse was filed. *Id.* at *11. As discussed above, Chief Justice Page's March 9, 2023 order satisfied the requirements of the designation procedure. However, the Chief Justice's order does not dispense with the Rule 10B requirements for entry of an order of recusal from Judge McMahon, or an order transferring the case to Judge Scott. In the absence of an order on Mother's motion to recuse, we cannot determine whether Judge McMahan granted Mother's motion or was otherwise "unavailable." Additionally, the transfer of a matter is not accomplished absent an order of the court. Even where a trial court's order is characterized as "ministerial" or "procedural," entry of the order is still required. *See Autin v. Goetz*, 524 S.W.3d 617, 632–33 (Tenn. Ct. App. 2017) ("[W]hile the plaintiff had the unqualified right to take a nonsuit [under Tennessee Rule of Civil Procedure 41.01], the voluntary dismissal was not actually accomplished until the trial court's signed order confirming the nonsuit was entered."); *see also State v. Brown*, 2023 WL 4573910, at *5 (holding that defendant waived objection to the designation of the interchange judge because he "did not act promptly in challenging the interchange order and seeking the recusal of [the judge] as is required by Rule 10B, section 1.01."). In the absence of the required order granting or denying Mother's motion to recuse (and, if recusal was granted, an order transferring the case to be heard by interchange), the case was not properly transferred to Judge Scott under Rule 10B.

Any remaining issues are pretermitted as unnecessary to the adjudication of this appeal.

## V. Conclusion

For the foregoing reasons, we vacate the judgment of the trial court and remand the case for further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellee, Joe Michael Carroll. Execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE